Maria Elsa VILLEGAS, Lorenzo Villegas, Jr., and Lynnette Villegas, Individually, and on behalf of the Estate of Lorenzo Villegas, Deceased; and Lourdes Sosa and Flaudio Sosa, Individually and as next friends of Fabiola Sosa, Lourdes Maria Sosa, and Elizabeth Sosa, Minor Children, Appellants,

v.

**TEXAS DEPARTMENT OF TRANSPORTATION AND REKCA, INC., Appellees.**

No. 04–02–00619–CV.

Court of Appeals of Texas, San Antonio.

Aug. 13, 2003.

Price Ainsworth, Francis Pan, Spivey & Ainsworth, P.C., Kelly Weiss, Austin, for appellants.

Randall W. Hill, Asst. Atty. Gen., Transportation Division, Austin, Victor V. Vicinaiz, Roerig, Oliveira & Fisher, L.L.P., McAllen, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Maria Elsa Villegas, Lorenzo Villegas, Jr., and Lynnette Villegas, individually and on behalf of the Estate of Lorenzo Villegas, deceased, (the "Villegases") and Lourdes Sosa and Flaudio Sosa, individually and as next friends of Fabiola Sosa, Lourdes Maria Sosa, and Elizabeth Sosa (the "Sosas") appeal the trial court's summary judgment granted in favor of codefendant, Texas Department of Transportation ("TxDOT"). Appellants also appeal the judgment rendered in favor of codefendant Rekca, Inc. ("REKCA"). Appellants assert three issues on appeal, contending: (1) the trial court erred in granting summary judgment to TxDOT based on sovereign immunity grounds; (2) the trial court erred in submitting the issue of REKCA's liability as a premises liability question instead of a general negligence question in the jury charge; and (3) the trial court erred in granting TxDOT's motion to strike appellants' expert. We affirm the

trial court's summary judgment in favor of TxDOT and affirm the trial court's judgment in favor of REKCA.

## BACKGROUND

This is a case arising from an automobile accident that occurred in Starr County on October 17, 1999. Lorenzo Villegas ("Lorenzo") was driving north on Highway 755, a two-lane highway, when his car hit a pool of rainwater that had collected on the road. His wife, Maria Elsa Villegas, sat in the front passenger seat, and Flaudio Sosa, Lourdes Maria Sosa, Fabiola Sosa, Lourdes Sosa, and Elizabeth Sosa sat in the back seat. As the car hit the water, it skidded, left the roadway to the right, rolled onto its roof, and came to rest in a water-filled culvert. Lorenzo was knocked unconscious and trapped by his seatbelt under water. Despite efforts to revive him, Lorenzo died early the next day.

On October 11, 2001, the Villegases brought suit for wrongful death and personal injuries against TxDOT and REK-CA. The Villegases asserted a claim against TxDOT under section 101.022(b) of the Texas Tort Claims Act that the water on the road was a special defect and TxDOT failed to use reasonable care to keep the premises safe. The Villegases further asserted claims of negligence and gross negligence against REKCA. REK-CA was a subcontractor that contracted with TxDOT to mow grass along the road in certain South Texas counties, including Starr County. The Sosas intervened in the Villegases suit and brought identical claims against TxDOT and REKCA. The basis of appellants' suit was that TxDOT and its subcontractor, REKCA, had failed to mow the vegetation and grass on the shoulder and culvert along Highway 755 thereby causing improper drainage of the culvert. Appellants argued that the appellees' failure to mow the shoulder and cul-

vert caused the rain to pool to a dangerous depth on the road, which in turn, was the proximate cause of the accident and Lorenzo's death.

On May 10, 2002, REKCA filed a motion for severance and motion for summary judgment asking for relief under both traditional summary judgment standards and no-evidence summary judgment standards. REKCA argued that it had no duty or responsibility, contractual or otherwise, to maintain the shoulder of the roadway. It further argued that it was entitled to summary judgment as a matter of law on the negligence claim because appellants provided no evidence that REKCA owed them a duty or that it had breached that duty. In their joint response to REKCA's motion, appellants argued that summary judgment was improper because a genuine issue of fact existed regarding REKCA's duty to maintain the roadway. On May 16, 2002, TxDOT filed a no-evidence motion for summary judgment on the basis that the water on the roadway was an ordinary premise defect and not a special defect for which it had a duty to warn or make safe. In their joint response to TxDOT's motion, appellants argued that TxDOT waived sovereign immunity as a matter of law because: (1) the water on the road created an unreasonable risk of harm; (2) TxDOT knew or reasonably should have known of the condition; (3) TXDOT failed to exercise ordinary care to protect appellants; and (4) TxDOT's failure to exercise ordinary care was the proximate cause of appellants' injuries. Appellants further argued that summary judgment was improper because the water on the road was a special defect of which TxDOT knew or should have known and failed to reduce or eliminate any unreasonable risk of harm produced by the condition. Attached to the joint response was the affidavit of appellants' designated expert, R.T. Abrahamson ("Abrahamson"),

which incorporated his Preliminary Professional Engineering Report, his resume, and 162 pages of supporting data and material.

At a pre-trial hearing, TxDOT filed a motion to strike Abrahamson's affidavit and supporting material because it had not been previously disclosed. The trial court struck Abrahamson's affidavit and granted TxDOT's motion for summary judgment. The trial court denied REKCA's motion to strike Abrahamson as an expert and its motion for summary judgement. The case went to trial against REKCA. The jury found that Lorenzo was 100% negligent in causing the accident and returned a verdict in favor of REKCA. Appellants timely appealed the summary judgment in favor of TxDOT and the judgment rendered in favor of REKCA.

## TEXAS TORT CLAIMS ACT

In their first issue, appellants contend that the trial court erred in granting summary judgment in favor of TxDOT based on sovereign immunity grounds. Specifically, appellants contend that the water on the roadway was not an ordinary premise defect but a special defect about which TxDOT knew or should have known. In addition, appellants contend that TxDOT's sovereign immunity was waived even if the condition on the road was a premise defect. TxDOT responds that the trial court properly granted summary judgment because the water on the road was a premise defect, not a special defect, and there is no evidence that TxDOT had any actual knowledge of the defect. The initial determinative issue in this case is whether the water on the road was an ordinary premise defect or a special defect.

*Standard of Review*

Texas Rule of Civil Procedure 166a(i) provides that after an adequate time for discovery, a party, without presenting summary judgment evidence, may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). In reviewing a no-evidence summary judgment, we apply the same standard of review that is applied in reviewing a directed verdict. *Moore v. K-Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore*, 981 S.W.2d at 269. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

*Special Defects and Premises Defects*

 TxDOT, as a state agency, is immune from suit unless that immunity is waived. *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d 447, 455 (Tex.App.-San Antonio 2001, no pet.) (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000)). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997); *City of Floresville*, 53 S.W.3d at 455. Three specified areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of

tangible personal or real property; and (3) claims arising from premises defects. *Id.* In their pleadings, appellants asserted that the collection of water on the road was a special defect. TxDOT contended that the condition was a premise defect and not a special defect. Whether a condition is a premise defect or a special defect is a question of law. *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992). We review a trial court's conclusions of law *de novo. Benedictine Sisters of the Good Shepherd v. Ellison,* 956 S.W.2d 629, 631 (Tex.App.-San Antonio 1997, pet. denied); *Tex. Dep't of Transp. v. O'Malley,* 28 S.W.3d 652, 655 (Tex.App.-Corpus Christi 2000, pet. denied). When the facts surrounding the condition are disputed, however, the trier of fact must resolve the underlying fact issues. *McCreight v. City of Cleburne,* 940 S.W.2d 285, 288 (Tex.App.-Waco 1997, writ denied).

Special defects are excavations or obstructions on highways, roads, or streets, TEX. CIV. PRAC. & REM.CODE § 101.022(b) (Vernon 1997), or other conditions that "present an unexpected and unusual danger to ordinary users of roadways." *Payne,* 838 S.W.2d at 238. A special defect unexpectedly and physically impairs a vehicle's ability to travel on the road. *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999); *State v. Wollesen,* 93 S.W.3d 910, 913 (Tex.App.-Austin 2002, no pet.). If the water on the road was a special defect, TxDOT owed appellants the same duty to warn that a private landowner owes an invitee. *See* TEX. CIV. PRAC. & REM.CODE § 101.022(b) (Vernon 1997); *Payne,* 838 S.W.2d at 237.

In its motion for summary judgment, TxDOT argued that the water on the roadway was a premise defect based on *State Department of Highways and Public Transportation v. Kitchen,* 867 S.W.2d 784 (Tex.1993) and *Corbin v. City of Keller,* 1 S.W.3d 743 (Tex.App.-Fort Worth 1999, pet. denied). In *Kitchen,* the decedent's widow and a passenger sued the State when the decedent skidded on a patch of ice and collided with an oncoming truck. *Kitchen,* 867 S.W.2d at 786. Plaintiffs brought suit under the TTCA asserting that the ice on the road was either a premise defect or a special defect and that the State breached its duty to warn motorists of the condition. *Id.* The Texas Supreme Court held that an icy bridge was not a special defect because "precipitation accompanied by near-freezing temperatures ... is neither unexpected nor unusual, but rather, entirely predictable." *Id.* The court stated that an "icy bridge is something motorists can and should anticipate when the whether is conducive to such a condition." *Id.* Consequently, the court concluded that the icy bridge was a premise defect. *Id.* Similarly in *Corbin,* the Fort Worth Court of Appeals held that a flooded low-water crossing, in which a motorist had drowned, was not a special defect. *Corbin,* 1 S.W.3d at 747. Applying *Kitchen* to the facts, the *Corbin* court concluded that "a flooded low-water crossing during flash flood conditions is neither unexpected nor unusual [because] [m]otorists can and should anticipate flooding in low lying areas when the weather is conducive to flooding." *Id.* The court further pointed out that the open and obvious nature of flood waters also serve to defeat the unexpected and unusual requirement for a special defect. *Id.*

In this case, a pool of water that accumulated on the road caused by rain throughout the day is not unexpected nor unusual to a motorist under such conditions. The summary judgment evidence showed that it had rained all day in the area on the day the accident occurred. In Antonia Solis's deposition, she testified

that she was traveling on Highway 755 an hour before the accident occurred and that "it had been raining a lot" that day and she was driving slow because it "was raining really fast." She further testified that "there was water everywhere." Water on the road is not unexpected or unusual and something a motorist can and should anticipate when it has been raining all day. *See Kitchen,* 867 S.W.2d at 786; *Corbin,* 1 S.W.3d at 747. The water on the road was open and obvious and a condition that an ordinary motorist could have anticipated due to the weather conditions. *See id.* Therefore, we hold that the water on the road was a premise defect and not a special defect.

Appellants cite *State Department of Highways and Public Transportation v. Zachary,* 824 S.W.2d 813 (Tex.App.-Beaumont 1992, writ denied) to argue that the water on the road was a special defect. In *Zachary,* a temporary road repair of buckling concrete on the road created a dam-like effect that prevented water from properly draining off the roadway. *Zachary,* 824 S.W.2d at 815; *Corbin,* 1 S.W.3d at 748 n. 4. Due to the dam, several inches of water pooled on the roadway, and a motorist was killed when he drove into the water and lost control of his car. *Zachary,* 824 S.W.2d at 815–16; *Corbin,* 1 S.W.3d at 748 n. 4. At trial, "[ ]xpert testimony indicated that an ordinary motorist would not have anticipated the large amount of water that had collected on the road as a result of the repair work." *See Zachary,* 824 S.W.2d at 816; *Corbin,* 1 S.W.3d at 748 n. 4. The trial court submitted both a premise defect question and a special defect question, and the jury found that the condition of the roadway was an obstruction about which the state should have known and that the failure to warn of the hazard was negligence. *Zachary,* 824 S.W.2d at 816–17. The Beaumont court of appeals found that there was ample evidence that permitted a

special defect question in light of expert testimony that the state's repair of the blowup created an obstruction of the roadway for ordinary motorists. *Id.* at 818. Here, appellants argue that, under *Zachary,* whether the water on the road is a special defect or ordinary defect is a fact issue to be determined by the jury. The Texas Supreme Court is clear, however, that whether a condition is a premise defect or a special defect is a question of law. *See Payne,* 838 S.W.2d at 238. A trier of fact only makes such a determination if the underlying facts are disputed. *See McCreight,* 940 S.W.2d at 288. Here, the underlying facts are undisputed, therefore, *Zachary* is inapplicable. *Zachary* is further distinguishable from the instant case because "the unexpected and unusual nature of the pooled water in that case was not something that ordinary motorists could have anticipated." *See Corbin,* 1 S.W.3d at 748 n. 4. The water on the road in this case could and should have been anticipated by ordinary motorists because of the rainy weather conditions. *See id.*

■ Having determined that the water on the road was not a special defect, we must next determine whether TxDOT was entitled to a no-evidence summary judgment under a premise defect theory. *See id.* Because the water on the road was a premise defect, TxDOT owed appellants the same duty that a private landowner owes a licensee. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997); *Payne,* 838 S.W.2d at 237. "That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Payne,* 838 S.W.2d at 237. "To establish liability, a licensee must prove that: (1) a condition of the

premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; [and] (5) the owner's failure was a proximate cause of injury to the licensee." *Id.; see* RESTATEMENT (SECOND) OF TORTS § 342 (1965). The key issue in this case is whether TxDOT had actual knowledge that there was water on the road at the time the accident occurred. Accordingly, to defeat summary judgment, appellants had to bring forth evidence that TxDOT actually knew of the condition of the road.

■ Looking at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, appellants failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether TxDOT had actual knowledge of the water on the road. The summary judgment evidence that appellants produced was the deposition testimony of Mr. Jesus Lara, TxDOT maintenance supervisor for the area, who stated that TxDOT was responsible for the maintenance of the road. He testified that as part of his job responsibilities, he conducted routine patrols of the area to determine when to mow the grass along Highway 755. Appellants also offered photos taken by Trooper Benito Reyes, which showed the overgrowth of the grass and vegetation along the shoulder and culvert at the time of the accident. Lara's testimony and the photos, however, do not show that TxDOT was aware of the condition on the date of the accident. Furthermore, there was no evidence that the overgrown vegetation had caused flooding in this particular area before the date of the accident. Because we hold that the water on the roadway was a premise defect, and appellants failed to

raise a fact issue regarding whether TxDOT had actual knowledge that water was on the road, TxDOT was entitled to summary judgment on sovereign immunity grounds as a matter of law. The trial court, therefore, did not err in granting TxDOT's motion for summary judgment. Accordingly, we affirm the summary judgment.

### EXPERT

In their third issue, appellants assert that the trial court erred in striking their expert and his affidavit, which had been attached to their joint response to TxDOT's motion for summary judgment. TxDOT responds that the trial court acted within its discretion in striking the newly produced evidence from appellants' expert.

Texas Rule of Civil Procedure 194.2(f)(3) provides, with regard to a testifying expert, that a party may request disclosure of the "general substance of the expert's mental impressions and opinions and a brief summary of the basis for them." TEX.R. CIV. P. 194.2(f)(3); *Mares v. Ford Motor Co.*, 53 S.W.3d 416, 418 (Tex.App.-San Antonio 2001, no pet.). If the expert is employed by or subject to the control of the responding party, the party may request disclosure of "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." TEX.R. CIV. P. 194.2(f)(4)(A). A responding party must serve a written response on the requesting party within thirty days after request of service. TEX.R. CIV. P. 194.3; *Mares*, 53 S.W.3d at 419. If a party fails to make, amend, or supplement a discovery response in a timely manner, the party may not introduce the information into evidence, unless the court finds that: (1) there was good cause for the failure to timely make,

amend, or supplement the discovery response; or (2) the failure would not unfairly surprise or unfairly prejudice the other parties. TEX.R. CIV. P. 193.6; *Mares,* 53 S.W.3d at 419.

■ We review a trial court's decision relating to discovery sanctions under an abuse of discretion standard. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986); *Mares,* 53 S.W.3d at 419. A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985); *Mares,* 53 S.W.3d at 419. Thus, an appellate court must determine whether the trial court's action was arbitrary or unreasonable. *Downer,* 701 S.W.2d at 242; *Mares,* 53 S.W.3d at 419.

■ In this case, on February 8, 2002, appellants designated Abrahamson as an expert and supplied TxDOT and REKCA with two boxes of materials, which included his conclusions and some supporting data. In appellants' response to TxDOT's motion for summary judgment, however, they attached Abrahamson's affidavit that included his report, resume, and 162 pages of supporting data and material, which had not previously been disclosed. The same day of the pre-trial hearing, TxDOT filed a motion to strike Abrahamson's affidavit and supporting material because it had not been previously disclosed in a timely manner. REKCA filed a separate motion to strike Abrahamson as an expert. At the hearing regarding TxDOT's motion to strike, appellants argued that Abrahamson's affidavit and additional material had been provided during discovery and it had been simply turned into demonstrative ex-

hibits. The trial court granted TxDOT's motion to strike Abrahamson as an expert, but denied REKCA's separate motion to strike. On appeal, appellants argue that the trial court erred in striking Abrahamson based solely on allegations that the demonstrative exhibits contained new information not exchanged during discovery. Appellants, however, provided no other explanation for failing to disclose the 162 pages of material to appellees during the discovery period. Because appellants failed to establish good cause for failing to timely disclose Abrahamson's affidavit and incorporated data, the trial court did not abuse its discretion in striking Abrahamson as appellants' expert. *See* TEX.R. CIV. P. 193.6; *Mares* 53 S.W.3d at 419.

■ Appellants further argue that the trial court abused its discretion because it denied REKCA's motion to strike the same expert testimony, even though REKCA alleged the identical reasons as TxDOT for omitting the expert testimony. The record reflects, however, that appellants only attached the affidavit and the 162 pages of additional material to their response to TXDOT's motion for summary judgment. They did not attach the affidavit and additional material to REKCA's motion. The trial court, therefore, was within its discretion to strike Abrahamson in response to TxDOT's motion to strike yet not strike Abrahamson as to REKCA. We overrule the appellants' third issue.

### JURY CHARGE

In their second issue, appellants contend that the trial court erred in submitting the issue of REKCA's liability as a premises liability question [1] instead of a general neg-

---

1. The court submitted the following charge to the jury:
 QUESTION NO. 1

 Did the negligence, if any, of those named below proximately cause the occurrence in question?

ligence question,[2] which they had pled against REKCA in their original petition. REKCA responds that appellants waived any complaint regarding the jury charge because their trial counsels failed to properly object to the proposed charge. REKCA further responds that even if appellants did not waive their complaint, the trial court did not abuse its discretion in submitting a premises liability question because appellants' negligence claim was based upon a theory of premises liability. Finally, REKCA argues that appellants were not entitled to a negligence charge because they failed to marshal any evidence that REKCA owed any duty to appellants.

*Waiver*

■ REKCA argues that the appellants waived any complaint regarding the trial court's submission of the premises liability question because the objections made by the Villegases' trial counsel were vague and did not state the grounds for their objections, and the Sosas' trial counsel did not separately object to the premises liability question. Any error in the jury charge must be preserved by distinctly designating the error and the grounds for the objection. Tex.R. Civ. P. 274; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex. 1992). The test for preserving error is "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Payne*, 838 S.W.2d at 241.

■ In light of the record, the Villegases preserved error by stating that they objected to the submission of a premises liability question because the evidence only supported the submission of a negligence question.[3] Because the Villegases

With respect to the condition of the premises, REKCA, INC. was negligent if—
a. the condition posed an unreasonable risk of harm, and
b. REKCA, INC. knew or reasonably should have known of the danger, and
c. REKCA, INC. failed to exercise ordinary care to protect Lorenzo Villegas, deceased, from the danger, by both failing to adequately warn Lorenzo Villegas, deceased, of the condition and failing to make that condition reasonably safe.
"Ordinary care," when used with respect to the conduct of REKCA, INC. as an owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstance. Answer "YES" or "NO" for each of the following:
 a. REKCA, INC.: _____
 b. Lorenzo Villegas, deceased _____

2. Appellants proposed the following general negligence charge to the jury regarding REKCA's liability:
QUESTION NO. 1
 Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "YES" or "NO" for each of the following:
 a. REKCA, INC.: _____
 b. Lorenzo Villegas, deceased _____

3. During the jury charge conference, the appellants' trial counsels stated the following:
[Villegases' Trial Counsel]: It's my understanding that the Court indicated that would be the preferred method that the Court has for submitting the issue so I think I have an objection to that question, your Honor.
The COURT: Okay
[Villegases' Trial Counsel]: We would object to that form of submitting the negligence issue as it fails to comport with the manner in which the evidence was produced, that is that this is a negligent maintaining of the roadway. I submit that—I guess better hand it to the Court clerk to have it marked as a proposed issue.
 That's just the general—I'll mark that Exhibit 1 not for the Jury, Your Honor. That was the proposed issue that just says did the negligence of any of those listed below proximately cause the occurrence in question, and it sets out the Defendant and the Plaintiff, and I understand that the Court is refusing that issue at this time?

made the trial court aware of the complaint, timely and plainly, and obtained a ruling, they sufficiently preserved error. *See Payne*, 838 S.W.2d at 241. Furthermore, the Sosas' adoption of the Villegases' objection was sufficient to preserve error in their own right. We recognize the general rule that when there are multiple parties, each party must generally lodge his own objection in order to preserve error. *Bohls v. Oakes*, 75 S.W.3d 473, 477 (Tex.App.-San Antonio 2002, pet. denied). Error may be preserved, however, where a trial court allows one codefendant to adopt the objection of another codefendant. *See Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 556 (Tex.App.-Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex.1998) (allowing a defendant to rely on the objection of another defendant in a multiple party case where the trial court required such an agreement, the defendants agreed, and the plaintiffs did not object to such an arrangement); *Celotex Corp. v. Tate*, 797 S.W.2d 197, 201–02 (Tex. App.-Corpus Christi 1990, writ dism'd by agr.) (holding that error was preserved when a trial court allowed a defendant's request that one defendant's objections would preserve error for all defendants); *Cf. Martinez v. State*, 833 S.W.2d 188, 191 (Tex.App.-Dallas 1992, pet. ref'd) (stating

that a criminal defendant "may adopt an objection made by a codefendant and, thus, preserve error when there is sufficient indication in the record of his intent to adopt the objection"). In this case, the trial court allowed the Sosas to adopt the Villegases' objection to the jury charge question, and as REKCA did not object, the jury charge complaint was preserved as to both the Villegases and the Sosas. Accordingly, we must next decide whether the trial court erred in submitting the premises liability question to the jury.

*Standard of Review and Jury Charge*

 Texas Rule of Civil Procedure 277 requires a trial court to submit those questions that enable the jury to return a proper verdict. Tex.R. Civ. P. 277. The trial court has great discretion in submitting the jury charge. *Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 463 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *See* Tex.R. Civ. P. 277. "This discretion is subject to the requirement that the questions submitted must control the disposition of the case, be raised by the pleadings and evidence, and properly submit the disputed issues for the jury's deliberations." *Id.* "Reversal is warranted when the trial court denies a proper submission of a valid theory of recovery raised by the pleadings and evidence." *Saenz v.*

---

The COURT: Yes. I will sustain the objection filed by [REKCA's trial counsel]—that's your question number 1?

\* \* \*

The COURT: Now, does the Plaintiff have any objections? If you want to re-urge your objection, I know it's on the record right now, but I think that you want to take up some of these objections for the record. [Villegases' Trial Counsel]: Just for the record, the only objection Plaintiff has to the charge as it currently exists is, we had suggested that the proper method for submitting the negligence issues as comported with the case and the evidence in this case, was to just submit a negligence issue rather than a premises-type issue. And we have

submitted Plaintiff's Exhibit Number 1 for the purpose of the record, that is, a proposed question for the Jury that just says, did the negligence, if any, of those listed below proximately cause the occurrence in question. And I think the Court has refused that.

The COURT: That will be noted. That will be denied. Any other objections that Plaintiff might have?

[Villegases' Trial Counsel]: No, sir.

The COURT: How about the Intervenor?

[Sosas' Trial Counsel]: No, your honor.

The COURT: You adopt the objection that he-

[Sosas' Trial Counsel]: Yes, sir.

*David & David Constr. Co.*, 52 S.W.3d 807, 809 (Tex.App.-San Antonio 2001, pet. denied) (citing *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992)).

### Premises Liability and Subcontractors' Duty

REKCA subcontracted with TxDOT to mow along the roadways; therefore, we must determine what duty, if any, REKCA owed to motorists traveling on Highway 755. An owner or occupier of land generally has a duty to use reasonable care to make and keep the premises safe for invitees. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997). "A general contractor is charged with the same duty as an owner or occupier. *Id.* A general contractor in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect. *Id.* Recovery on a negligent activity theory requires that the plaintiff be injured by or as a contemporaneous result of the activity itself." *See id; Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992). To recover on a premises liability theory, one must be injured by a condition on the property created by the activity. *See Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex.App.Houston[14th Dist.] 1995, writ dism'd as moot). In general, "a person who does not own or possess property assumes no liability for injury under a premises liability theory, unless he assumes control over, and responsibility for, the premises." *See Rendleman*, 909 S.W.2d at 60 (citing *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex.1986)). "It is the possession and control which generally must be shown as a prerequisite to liability." *See id; see also City of Denton*, 701 S.W.2d at 835. Accordingly, if an independent contractor is in control of the premises, he is charged with the same duty as an owner or possessor. *See Rendleman*, 909 S.W.2d at 60 (applying this general rule to an independent contractor on a construction site); *see also City of Denton*, 701 S.W.2d at 834.

In this case, it is undisputed that TxDOT was responsible for maintaining Highway 755, including the shoulders and culverts along the road. TxDOT contracted with REKCA to mow the grass on the shoulders and culverts at TxDOT's discretion; therefore, REKCA was a subcontractor. As such, REKCA is only subject to premises liability if it assumed control over, and responsibility for, the premises. *See Rendleman*, 909 S.W.2d at 60. The evidence shows that as part of the contract, TxDOT maintenance supervisor, Jesus Lara, was responsible for patrolling the contract area to determine when to mow the grass on the shoulder and culvert. Lara would then contact REKCA and inform it of when and where to start mowing. Under the contract, REKCA would have seven days to start mowing. Bill Acker, president of REKCA, stated that the mowing would take up to six weeks, and they could begin to mow any area within the specified area of the contract.[4] Although there was no evidence of when the contract started as to the particular area where the accident occurred, appellants did offer several certification sheets signed by TxDOT supervisors that the contract started on October 26, 1999. On one sheet, a handwritten date indicated the contract may have begun October 17, 1999 (the date of the accident); however, no one could testify conclusively about the meaning of that handwritten date.

REKCA argues that appellants' pleadings were sufficient to support the submission of a premises liability question

4. The contract estimate and quantity sheet provided that REKCA was responsible for mowing the shoulders and culverts along Highway 755.

to the jury. This assertion is correct but only if the evidence showed that REKCA exercised sufficient control over the premises. Possession and control are a prerequisite to premises liability, and the evidence in this case does not support the submission of the premises liability issue to the jury. It is undisputed that REKCA did not own or control the property where the accident occurred. Appellants conceded in their brief and at oral argument that REKCA was just a mowing contractor and was not an owner or occupier who otherwise had control of the premises. There was no evidence that REKCA had been instructed to start mowing the area in question before the accident. Rather, the evidence reflects that REKCA did not begin mowing any area under the contract until after the accident. Therefore, REKCA did not exercise sufficient control over the roadway and culvert to impose upon it the duties of a possessor occupier. Accordingly, the trial court improperly submitted the question of premises liability to the jury.

■■■ We review a trial court's submission of jury questions under an abuse of discretion standard. TEX.R. CIV. P. 277; *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 232–233 (Tex.App.-San Antonio 2001, pet. denied). Because the trial court erred, we must decide whether the trial court's error probably caused the rendition of an improper judgment so as to warrant reversal. TEX.R.APP. P. 44.1(a)(1). We may only reverse a jury charge error if the appellants show harmful error. *Aquila Southwest Pipeline, Inc.,* 48 S.W.3d at 233 (citing *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–50 (Tex.1980)). "To de-

termine whether an alleged error in the charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety." *Id.*

■■■ In the instant case, the trial court improperly submitted the premises liability issue because there was no evidence of REKCA's control. The trial court's only alternative, therefore, was to submit a negligence question to the jury as requested by the appellants; however, the trial court declined the requested charge on negligence.[5] "In order to prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach". *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex. 1995); *Pinkerton's v. Manriquez,* 964 S.W.2d 39, 44 (Tex.App. Houston [14th Dist.] 1998, pet. denied). The threshold issue in a negligence case is whether the defendant owed a duty to the plaintiff. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Pinkerton's,* 964 S.W.2d at 44. The plaintiff must establish both the existence of a duty and the violation of that duty by the defendant. *Greater Houston Transp. Co.,* 801 S.W.2d at 525; *Pinkerton's,* 964 S.W.2d at 44. Whether the defendant owed a duty to the plaintiff is a question of law. *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 289 (Tex.1996). A jury question, however, may arise "when (1) the facts and circumstances that a court would use to determine duty are disputed, or (2) the inferences that may be drawn from the facts

---

5. *See Rendleman,* 909 S.W.2d at 60. The *Rendleman* court held that appellants owed a duty of ordinary care under general negligence after determining that appellant did not exercise sufficient control of the premises to

impose upon it the duty of a possessor or occupier and there was "no special relationship that would bring appellee within the scope of appellant's duty under a premises liability theory." *Id.*

are disputed." *Cent. Power & Light Co. v. Romero,* 948 S.W.2d 764 (Tex.App.-San Antonio, 1996, writ denied).

 Looking at the record as a whole, appellants failed to establish that REKCA owed them a duty to mow the shoulders and culvert before the date REKCA's contract began. REKCA did not own or control the premises. Furthermore, REKCA was not obligated to mow the shoulder and culvert along the roadway until it was directed to begin by TxDOT. Therefore, we hold as a matter of law that a submission of a negligence issue would have been improper. Accordingly, the trial court's error in submitting the premises liability issue and refusal to submit the negligence issue did not cause the rendition of an improper judgment so as to warrant reversal. Tex.R.App. P. 44.1(a)(1).

## CONCLUSION

We affirm the trial court's summary judgment in favor of TxDOT. We also affirm the trial court's judgment in favor of REKCA.