**Debra KIRWAN, Individually and as Personal Representative of the Estate of Brad McGehee, Deceased, Appellant,**

v.

**CITY OF WACO, Appellee.**

No. 10–07–00123–CV.

Court of Appeals of Texas, Waco.

Jan. 9, 2008.

---

546

John Jeffery Mundy & Michael C. Singley, Austin, for appellant.

C. Alfred Mackenzie, Haley & Olson PC, Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This appeal involves a premises defect claim against the City of Waco. Debra Kirwan's son, Brad McGehee, was sitting on the edge of Circle Point Cliff in Camer-

on Park, a park owned and operated by the City, when the ground beneath him gave way and he fell approximately sixty feet to his death. Kirwan, individually and as representative of Brad's estate, brought a wrongful death suit against the City, alleging a premises defect. The City filed a plea to the jurisdiction. The trial court granted the plea, holding that Kirwan had not: (1) "alleged that the Defendant was grossly negligent in creating a condition that a recreational user would not reasonably expect to encounter in Cameron Park in the course of permitted use;" or (2) "raise[d] a genuine issue of material fact." Kirwan appeals the trial court's judgment, arguing that: (1) the recreational use statute does not require that all premises defect claims be based on a condition created by the defendant; (2) the record contains more than a scintilla of evidence on each element of gross negligence; and (3) the trial court abused its discretion by sustaining the City's objection to certain testimony and overruling Kirwan's objection to certain photographs. We reverse and remand.

## EVIDENTIARY ISSUES

In her third issue, Kirwan argues that the trial court erred by (1) sustaining the City's objection to the testimony of Captain Benjamin Samarippa; and (2) overruling her objection to photographs of Circle Point Cliff. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex.2005).

### Testimony

During his deposition, Samarippa, a firefighter who responded to the scene of Brad's fall, testified that an average person would "probably not" "understand that the ground could give way underneath them." Kirwan provided Samarippa's testimony as evidence in response to the City's plea. The City objected, arguing that the testimony is speculative. Kirwan countered that the testimony constitutes admissible lay witness opinion. The trial court sustained the City's objection.

If a witness is not testifying as an expert, his "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX.R. EVID. 701. Testimony based on speculation has no probative value. *See United Way v. Helping Hands Lifeline Found.*, 949 S.W.2d 707, 711 (Tex.App.-San Antonio 1997, writ denied).

Samarippa testified that he has trained in Cameron Park, has observed the park cliffs, and was unaware that the cliff rocks could give way beneath someone. That an average person would not understand that the ground could give way is an opinion or inference reasonably based on Samarippa's personal perceptions of the cliff conditions. The testimony assists the trier of fact in determining whether the condition alleged is open and obvious, an ultimate issue in the case. *See State v. Shumake*, 199 S.W.3d 279, 288 (Tex.2006) ("A landowner has no duty to warn or protect trespassers from obvious defects or conditions"). Accordingly, we cannot say that Samarippa's testimony amounted to mere speculation. The trial court abused its discretion by granting the City's objection to Samarippa's testimony.

### Photographs

The City attached five photographs to the affidavit of park recreational director Rusty Black as an exhibit to its plea. In his affidavit, Black testified to his

personal knowledge of the facts stated therein, identified the date on which the photographs were taken, and stated that the photographs "accurately portray the scenes at Circle Point Cliff depicted therein and accurately represent the scenes depicted therein" as he had observed them prior to Brad's death. At his deposition, Black testified that he did not know who took the photographs, when they were taken, or whether they depicted the area from which Brad fell. Kirwan objected that the photographs are not properly authenticated. The trial court overruled Kirwan's objection.

■ "Admissibility of a photograph is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that witness or a person with knowledge that the photograph is a correct representation of such facts." *Davidson v. Great Natl. Life Ins. Co.*, 737 S.W.2d 312, 314–15 (Tex.1987). The authentication requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX.R. EVID. 901(a).

It is not required that Black made the photographs, observed their making, or knew when they were taken. *See Kessler v. Fanning*, 953 S.W.2d 515, 522 (Tex. App.-Fort Worth 1997, no pet.) ("predicate for admissibility need not be laid by the photographer, the person photographed, or even a person who was present when the photograph was taken"). All that is necessary is testimony from a witness with personal knowledge that the photographs accurately depict what they are "claimed to be." TEX.R. EVID. 901(b)(1); *see Kessler*, 953 S.W.2d at 522 ("any witness who observed the object or scene depicted in the photograph may lay the predicate"). Black's affidavit satisfied this requirement. The trial court properly overruled Kirwan's objection to the photographs.

Because Samarippa's testimony was improperly excluded and the photographs were properly admitted, we will consider both when conducting our analysis. Kirwan's third issue is sustained in part and overruled in part.

## RECREATIONAL USE STATUTE

In her first issue, Kirwan challenges whether the recreational use statute requires that all premises defect claims be based on a condition created by the defendant, thereby barring any claim based on a natural condition.

### Sovereign Immunity

■ "[S]overeign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex.2004). The Tort Claims Act includes "a limited waiver of the state's immunity from suits alleging personal injury or death caused by premises defects." *Shumake*, 199 S.W.3d at 283; *see* TEX. CIV. PRAC. REM.CODE ANN. §§ 101.002, 101.021(2), 101.022, 101.025 (Vernon 2005 & Supp.2007). It "further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute." *Miranda*, 133 S.W.3d at 225; *see* TEX. CIV. PRAC. REM.CODE ANN. § 101.058 (Vernon 2005). "The recreational use statute recognizes that landowners or occupiers, who open their property to the public for recreational purposes, provide a public benefit." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex.2007). "To encourage this use, the statute limits the liability of the 'owner, lessee, or occupant of real property' who gives permission to another to enter the premises for recreation." *Id.*; *see* TEX. CIV. PRAC. & REM.CODE

ANN. § 75.002(c) (Vernon Supp.2007). "When injury or death results on state-owned, recreational land," the statute limits the state's duty for premises defects to that "owed by a landowner to a trespasser." *Shumake*, 199 S.W.3d at 283; *see* TEX. CIV. PRAC. REM.CODE ANN. §§ 75.002, 75.003(g), 101.058 (Vernon 2005 & Supp. 2007). "The limited duty owed a trespasser is not to injure that person willfully, wantonly, or through gross negligence." *Miranda*, 133 S.W.3d at 225.

## Standard of Review

■■■■ Whether a court has subject matter jurisdiction is a question of law that we review *de novo*. *Miranda*, 133 S.W.3d at 226. If a plea to the jurisdiction challenges the pleadings, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* If a plea "challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id.* at 227. "[W]e take as true all evidence favorable to the nonmovant," indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 228.

## Analysis

■■■ Kirwan argues that the recreational use statute permits a premises defect claim based on a natural condition, such as the structurally unstable cliff rock that collapsed beneath Brad. She relies on *Miranda* to support this position. In *Miranda*, the Texas Supreme Court addressed a claim involving falling tree limbs at a state park operated by the Department of Parks & Wildlife. *See* 133 S.W.3d at 221. In determining whether the Department's plea to the jurisdiction was properly denied, the Court considered whether the Mirandas' pleadings were sufficient to establish that the Department was grossly negligent and whether the Mirandas raised a fact issue regarding the Department's gross negligence. *See id.* at 230–32.

■■■ A plurality of the Court first determined that "[t]he Mirandas' allegation of an injury caused by a tree limb falling on Maria Miranda constitutes an allegation of a condition or use of real property and *is an allegation of a premises defect.*"[1] *Id.* at 230 (emphasis added). However, a majority of the Court determined that the Mirandas had "failed to raise a fact question regarding the Department's alleged gross negligence." *Id.* at 232. The Court rejected the Mirandas' attempt to recast their premises defect claim as one covered by the Tort Claims Act's waiver of immunity for injuries arising out of conditions or use of property:

> The allegations in the Mirandas' third amended petition concern only the Department's failure to act to reduce risks of falling tree limbs and failure to warn the Mirandas of the risk of falling tree limbs. *These allegations comprise the elements of their premises defect claim.*

*Id.* (emphasis added).

Based on both the plurality and majority findings that the Mirandas' allegations comprise a premises defect claim, Kirwan argues that *Miranda* permits a claim based on a natural condition, *i.e.*, falling tree limbs. *See id.* at 230, 233. She contends that, if a natural condition cannot support a premises defect claim, the Court

---

1. We note that a plurality opinion has little precedential value, if any. *See Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176 (Tex.1994).

"engaged in a pointless waste of words" by conducting its gross negligence analysis.

Kirwan next argues that *Shumake,* decided after *Miranda,* does not prohibit claims based on natural conditions as long as the condition is not open and obvious. In *Shumake,* the Court addressed a claim where a young girl was swimming in a river at a state-owned park when she was "sucked underwater by a powerful undertow," became trapped in a man-made culvert, and drowned. 199 S.W.3d at 281.

Addressing the denial of the State's plea to the jurisdiction, the Court recognized that the recreational use statute does not " 'limit the liability of [a landowner] who has been grossly negligent or has acted with malicious intent or in bad faith.' " *Id.* at 286–87. The statute permits a claim for gross negligence "[b]ecause gross negligence may result from acts or omissions" and the statute "does not distinguish between injuries caused by conditions and activities." *Id.* at 287. The Court further addressed the conditions under which "a failure to guard or warn against a dangerous condition may be considered grossly negligent, malicious or willful:"

> [W]e do not hold, or even imply, that a landowner may be grossly negligent for failing to warn of the inherent dangers of nature. *A landowner has no duty to warn or protect trespassers from obvious defects or conditions.* Thus, the owner may assume that the recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing river, or even a concealed rattlesnake. But a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to en-

counter on the property in the course of the permitted use.

*Id.* at 288 (internal citations omitted) (emphasis added). The Court found the Shumakes' pleadings "sufficient to state a premises liability claim under the recreational use statute." *Id.*

Kirwan points to the above italicized language to support her position that *Shumake* is not a complete bar to premises defect claims based on natural conditions, but rather allows claims alleging *hidden* natural defects. She argues that the statute "permit[s] any type of gross negligence action" and that *Shumake* expressly refused to limit the "type of gross negligence liability permitted by the statute." *See id.* at 287 (rejecting the Department's argument that "the Legislature was only concerned about a landowner's contemporaneous and active conduct;" "[n]othing in the language indicates that the Legislature intended that gross negligence should have such a special or limited meaning"). She relies on *Flynn* for additional support:

> In *Shumake,* we held that the recreational use statute does not foreclose premises defect claims, but rather limits the landowner's liability by raising the plaintiff's burden of proof to that of gross negligence, malicious intent, or bad faith. We further emphasized that the statute's liability limitations should have meaning. *Thus, we observed that landowners have no duty to warn or protect recreational users from defects or conditions that are open and obvious.*

228 S.W.3d at 659–60 (internal citations omitted) (emphasis added).[2] Thus, Kirwan urges that the Court's holding that "a landowner can be liable for gross negligence in creating a condition" is merely an example of a type of actionable claim, not a

2. *Flynn* did not involve a natural condition. *See Stephen F. Austin State Univ. v. Flynn,* 228

S.W.3d 653, 655 (Tex.2007).

mandate excluding all claims based on natural conditions or requiring that all claims be based on conditions created by the defendant.[3] *Shumake*, 199 S.W.3d. at 288.

The City argues that *Shumake* "limited application of the gross negligence standard in failure to warn cases to claims that a governmental entity is grossly negligent in *creating* a condition that a recreational user would not reasonably expect to encounter in the course of a permitted use." Thus, the City contends that it cannot be held "grossly negligent for failing to warn of the inherent dangers of nature."

▇▇▇▇▇ We do not read *Shumake* to suggest that all natural conditions are *per se* open and obvious or that a natural condition may *never* serve as the basis for a premises defect claim. Under *Shumake*, "[a] landowner has no duty to warn or protect trespassers from *obvious* defects or conditions." 199 S.W.3d at 288 (emphasis added). A "landowner *can be* liable for gross negligence in creating a condition," but is not necessarily liable for creating such a condition. *Id.* (emphasis added). The natural conditions identified in *Shumake*, "a sheer cliff, a rushing river, or even a concealed rattlesnake," are open and obvious conditions that a person might reasonably expect to encounter in a park. *Id.* These conditions yield predictable results, *i.e.*, falling off a cliff, being swept away by rushing water, or suffering a snake bite. Such conditions require no warning. Other natural conditions, however, may pose a hidden danger that a person might not reasonably expect to encounter. Had the Supreme Court intended to exclude premises defect claims based on hidden or latent dangers, it could have simply done so without limiting a landowner's duty to open and obvious conditions. We, therefore, hold that the recreational use statute permits premises defect claims based on natural conditions as long as the condition is not open and obvious and the plaintiff furnishes evidence of the defendant's alleged gross negligence. *See Shumake*, 199 S.W.3d at 288; *see also Miranda*, 133 S.W.3d at 233–34.

Because we so hold, we must determine whether Kirwan's allegations of structurally unstable cliff rock constitute a hidden or latent condition for which a premises defect claim may be brought. The City argues that "the recreational user needs no warning to appreciate the dangers of walking or sitting on crumbling limestone 'more than 60 feet' above the ground at the base of the cliff." According to the City, the ground was not composed of "solid rock ground," as evidenced by crumbing rocks depicted in its photographs. In his affidavit, Black described Circle Point Cliff as consisting of "loose rock and natural

---

**3.** Kirwan further argues that other types of premises liability cases have recognized claims based on natural conditions. *See County of Harris v. Eaton*, 573 S.W.2d 177, 180 (Tex.1978) (hole in the highway); *see also Stewart v. City of Corsicana*, 211 S.W.3d 844, 851 n. 5, 852 (Tex.App.-Waco 2006, pet. filed) (flooded road); *Texas Dep't of Transp. v. Cotner*, 877 S.W.2d 64, 65, 67 (Tex.App.-Waco 1994, writ denied) (icy bridge); *McVicker v. Johnson County*, 561 S.W.2d 610, 610–611 (Tex.Civ.App.-Waco 1978, writ ref'd n.r.e.) (flooded road); *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (icy bridge); *Villegas v. Tex. DOT*, 120 S.W.3d 26, 33–34 (Tex.App.-San Antonio 2003, no pet.) (water on the road); *Graham v. Tyler County*, 983 S.W.2d 882, 885 (Tex.App.-Beaumont 1998, pet. denied) (washout); *Chappell v. Dwyer*, 611 S.W.2d 158, 161 (Tex. Civ.App.-El Paso 1981, no writ) (arroyo); *Miranda v. State*, 591 S.W.2d 568, 569 (Tex.Civ. App.-El Paso 1979, no writ) (flood water on highway). These cases may lend some support to Kirwan's argument, but as the City points out, these cases address natural conditions in the context of the Tort Claims Act, not the recreational use statute, and so are not directly on point.

cracks." He stated that the "danger of slipping on the loose rock and falling off the cliff, as well as the danger that the limestone could continue to crack, should have been obvious to anyone who might walk or sit on the limestone cliff."

Crumbling rocks and cracks do not conclusively prove that the danger of structurally unstable cliff rock is open and obvious. As Kirwan points out, crumbling rock may alert the average person to the risk of slipping and falling, but certainly not that the ground will simply fall apart beneath him. In fact, Samarippa testified that he did not know the ground was unstable or could collapse and that an average person would probably not understand this risk. As Samarippa's testimony indicates, a visual inspection of the cliffs in Cameron Park would not warn a park patron that the ground could give way beneath him. We cannot say that structurally unstable cliff rock is an open and obvious condition that a person might reasonably expect to encounter.

Accordingly, we sustain Kirwan's first issue.

## GROSS NEGLIGENCE

In her second issue, Kirwan argues that the record contains more than a scintilla of evidence on the elements of gross negligence. Because the City's plea challenged Kirwan's pleadings and presented evidence controverting Kirwan's jurisdictional allegations, we must consider (1) whether Kirwan's pleadings allege a premises defect; and (2) whether Kirwan presented sufficient evidence to raise a fact question as to the City's alleged gross negligence. *See Miranda*, 133 S.W.3d at 226–28.

### Kirwan's Pleadings

To state a claim under the recreational use statute, Kirwan must allege sufficient facts to establish that the Department was grossly negligent. *See Shumake*, 199 S.W.3d at 281; *see also Miranda*, 133 S.W.3d at 225. The pleadings need only provide a "plain and concise" statement of the cause of action "sufficient to give fair notice of the claim involved." Tex.R. Civ. P. 45(b); Tex.R. Civ. P. 47(a). "That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." Tex.R. Civ. P. 45(b).

According to Kirwan's second amended petition, Brad was "sitting on solid rock ground" when "[s]uddenly and without warning, the solid rock ground collapsed underneath him," causing him to fall "more than 60 feet to the ground below." Kirwan alleged that (1) "the rock in Cameron Park posed an extreme risk of danger due to its propensity to collapse;" (2) the condition is "not open and obvious to the average lay person" who would expect the ground to be safe, not "unstable and liable to either give way ... or if on the path below, to have rock walls shearing and falling on the park patron;" (3) the condition is an "uncommon, hidden peril or danger on the land that is not inherent in the use to which the land was put and that would not be reasonably discovered or avoided by Brad McGehee or a similarly situated person;" (4) the City had "actual, subjective awareness" of this dangerous condition; (5) "other park patrons have died or been seriously injured by the condition of these premises;" (6) the City received a report warning of dangerous rock falls and advising the City to post signs warning of "potentially fatal rock falls;" (7) the City's failure to "warn or guard against" this danger amounted to gross negligence; and (8) the City's failure to act involved an "extreme degree of risk considering the probability and magnitude of harm to others posed by the not open and

obvious condition of the ground in the park" and it "therefore proceeded with conscious indifference [to] the rights, safety, and welfare of others." Kirwan plainly alleged that the City's conduct amounted to gross negligence.

The City argues that Kirwan's pleadings are insufficient because she does not allege that "the City was grossly negligent 'in *creating a condition* that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use.'" As we held above, the recreational use statute permits claims based on *hidden* natural conditions, such as the structurally unstable cliff rock in this case. Kirwan was not required to plead that the City was grossly negligent in *creating* a condition.

■ The City also contends that Kirwan relies on the "ordinary premises liability standard,"[4] not the gross negligence standard required by the recreational use statute. We disagree. Kirwan pleaded that the City was grossly negligent because it had "actual, subjective awareness" of an extreme degree of risk and proceeded with "conscious indifference [to] the rights, safety, and welfare of others." Whether the City failed to warn or protect patrons from this danger goes to the City's conscious indifference. Kirwan's pleadings as a whole are sufficient to state a claim under the recreational use statute. *See* Tex.R. Civ. P. 45(b); *see also Shumake*, 199 S.W.3d at 281; *Miranda*, 133 S.W.3d at 225, 232.

### Evidence of Gross Negligence

■ Gross negligence constitutes an act or omission: (1) "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others;" and (2) "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem.Code Ann. § 41.001(11) (Vernon Supp.2007); *see Miranda*, 133 S.W.3d at 225; *see also Flynn*, 228 S.W.3d at 660. "'[E]xtreme risk,' means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001). "[I]t is the defendant's state of mind— whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences—that separates ordinary negligence from gross negligence." *Miranda*, 133 S.W.3d at 232.

### Actual, Subjective Awareness of an Extreme Degree of Risk

■ The City was aware of other incidents where patrons had been injured as a result of conditions in the park. Black recalled four "incidents where falls occurred." The record does not indicate that these other accidents resulted from the ground collapsing. In fact, Black testified that he was unaware of any conditions in the park where the ground appears to be solid, but which is "actually unstable and can give way." He testified that if he were aware of such a condition, something

---

**4.** "To establish liability for a premise defect under the TTCA, among other things, a plaintiff must plead and prove *either* willful, wanton or grossly negligent conduct, *or* that the defendant had actual knowledge of the dangerous condition, the plaintiff did not, and the defendant failed to warn of the condition or make it safe." *City of Houston v. Harris*, 192 S.W.3d 167, 175 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (emphasis added).

would be done to "prevent that potential problem from occurring."

However, Kirwan argues that the City had received a report identifying the risk of structurally unstable cliff rock. A graduate student in geology from Baylor University prepared a report to "conduct a Preliminary Rockfall Hazard Assessment" of Emmons Cliff/Lovers Leap located in Cameron Park. The purpose of the report was to "determine the critical areas of potential rockfalls" and provide the City with a "guideline for taking the next step in protecting pedestrians along the path." The report states that "[t]here are significant reasons to believe that rock falls have occurred in the recent past" and " '[t]here is reason to worry that a pedestrian may be hurt from a future rockfall event.' " The report explained that "slab failure may cause a more significant failure to occur from above" and "[b]locks falling as a result of toppling from any height can cause a significant amount of damage to people and property." Fault plain wedge failure was the "most major type of failure" observed at the cliffs and "may be the most hazardous rockfall due to the massive volume of rock generally observed to be associated with this type of failure." "Greater than 2500 cubic feet of rock associated with the plane wedge failure could come crashing down at any time." The report advised that "[s]igns must be erected warning pedestrians of potentially fatal rock falls" and provided options to "stabilize rock slopes, and protect people and property."

The City contends that this report does not constitute evidence of the City's knowledge because: (1) the report does not address the cliff from which Brad fell; and (2) the report addresses only the risk of rocks falling onto the paths below the cliffs and does not advise of the "specific peril," the ground collapsing, that caused Brad's death. Kirwan replies that the City need not possess knowledge of the "exact sequence and means by which the dangerous condition caused Brad's death." (citing *Providence Health Ctr. v. Dowell*, 167 S.W.3d 48, 53–54 (Tex.App.-Waco 2005, pet. filed) ("Foreseeability does not require that the person who creates the dangerous situation anticipate the precise manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate") and *Taylor v. Carley*, 158 S.W.3d 1, 9 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (same)); see *Harrison*, 70 S.W.3d at 785.

According to Black's affidavit, Circle Point Cliff is composed of limestone, the same stone as the cliffs described in the report. That the report focuses on one particular cliff does not authorize the City to ignore other similar areas in the park. Awareness of a problem with one cliff should alert the City to the possibility of similar problems with other similar cliffs. Moreover, the report identifies the risk of large segments of rock breaking away and falling. Just as those rocks could cause injury by falling onto patrons using the paths below, they could also cause injury to patrons sitting or standing on the rocks as they give way and fall to the paths below. Both scenarios involve the same hazardous condition, structural instability of the rocks. That the ground could collapse beneath someone is certainly a possibility inherent in the risk of the rock falls as described in the report.

■ In light of the report, we cannot say that the record contains no evidence of an extreme degree of risk, *i.e.*, structurally unstable cliff rock, or that the City possessed actual, subjective awareness of this risk. A plaintiff may establish the defendant's mental state—the defendant's state of mind—by circumstantial evidence. *See*

*Harrison,* 70 S.W.3d at 785. The report is some evidence that the City had actual, subjective awareness.

**Conscious Indifference to an Extreme Degree of Risk**

██ This is not a case where the City wholly failed to act. Prior to Brad's death, the City had constructed a low wall obstructing access to the cliff and posted signs instructing patrons not to go beyond the wall. Kirwan, nevertheless, contends that the City acted with conscious indifference by failing to *adequately* warn or protect patrons of the specific danger of structurally unstable rock.

Black admitted that the City's existing signs merely read, "for your safety do not go beyond wall," and do not warn of unstable rock, explain the type of hazard existing beyond the wall, or describe any type of hazard or danger. The report specifically advised the City to post signs warning of "potentially fatal rock falls." Yet, City Manager Larry Groth testified that he was unaware that the City took any action "related to the study." After Brad's death, the City installed fencing and the parks department held a meeting identifying the need to post "signs warning of falling rocks on trails," "[i]ncrease patrols in parks when events attract spectators to the cliffs," and "[e]ducate the public about the instability of limestone."

Although not in the context of the recreational use statute, Texas courts have addressed the adequacy of warnings. *See Tex. Dep't of Transp. v. Gutierrez,* 243 S.W.3d 127, 136 (Tex.App.-San Antonio, no pet. h.) (evidence "supported a lack of adequate warning" in light of expert testimony that "Loose Gravel" sign "failed to specify the hazard" because "loose gravel in and of itself is not a hazard, and drivers could simply interpret the sign as warning against damage to their vehicles and not as

a warning that a hazard existed that would cause them to lose control of their vehicle"); *see also Tex. Dep't of Transp. v. McHenry,* No. 14–95–00290–CV, 1996 WL 726920, at *2, 1996 Tex.App. Lexis 5638, at *6–7 (Tex.App.-Houston [14th Dist.] 1996, no writ) (not designated for publication) ("signs warning of an intersection, curve or grooved pavement [do not] reasonably alert a motorist to a danger of water standing on the road"); *Smither v. Texas Utilities Elec. Co.,* 824 S.W.2d 693, 694–96 (Tex.App.-El Paso 1992, writ dism'd) (signs stating, "DANGER, KEEP OUT, DEEP WATER–STRONG CURRENT, 'STAY AWAY!' FOR YOUR OWN SAFETY'" evidenced a "conscious concern" for the "safety even of trespassers"); *State v. McBride,* 601 S.W.2d 552, 557 (Tex.App.-Waco 1980, writ ref'd n.r.e.) (cones, a barricade, a "SLOW" sign, and a "35 MPH" sign were a "long way from warning of the slick, muddy condition of the road, which condition was within the peculiar knowledge of Appellant, and of which condition the evidence shows that Plaintiff–Appellee had no knowledge until it was too late").

The City's existing signs indicate some "conscious concern" for the safety of park patrons. *See Smither,* 824 S.W.2d at 696; *see also Guadalupe–Blanco River Auth. v. Pitonyak,* 84 S.W.3d 326, 341 (Tex.App.-Corpus Christi 2002, no pet.) ("sign warning boaters of the dangerous currents, whether inadequate or misleading or not, would appear to negate a claim of conscious indifference to the rights, safety or welfare of others"). However, these signs not only fail to warn of structurally unstable ground, but they fail to warn of *any* potential hazard. We cannot say that these signs are adequate as a matter of law.

Accepting as true all evidence favorable to Kirwan, indulging all inferences in her favor, and resolving all doubts in her favor,

we hold that Kirwan's pleadings and evidence raise fact questions as to: (1) the City's actual, subjective awareness; and (2) whether the City acted with conscious indifference. *See Harrison,* 70 S.W.3d at 785 ("some evidence of care does not defeat a gross-negligence finding"). Kirwan has raised fact questions as to the City's alleged gross negligence. We sustain her second issue.

## CONCLUSION

Having determined that the recreational use statute does not bar premises defect claims based on hidden natural defects and that Kirwan has raised fact questions as to the City's gross negligence, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissents without a separate opinion but notes that there are many reasons he can join no part of the majority opinion or judgment.