**REVERSE and RENDER in part; AFFIRMED and Opinion Filed April 11, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00478-CV**

**SHERRY BEARD AND JOSEPH BEARD, Appellants**
**V.**
**MCGREGOR BANCSHARES, INC. AND THE FIRST NATIONAL BANK OF MCGREGOR D/B/A TFNB YOUR BANK FOR LIFE, AND DAVID LITTLEWOOD, Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-04466**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Smith

This is an appeal from the denial of two TCPA motions to dismiss. The underlying lawsuit began when appellees McGregor Bancshares, Inc. and The First National Bank of McGregor d/b/a TFNB Your Bank for Life (TFNB) filed a Rule 202 petition seeking to discover the identity of a person who allegedly sent defamatory, anonymous FedEx packages to various parties. After McGregor Bancshares and TFNB conducted discovery, they amended the petition to allege numerous causes of actions against appellant Joseph Beard (Joe). Appellee David

Littlewood, as a third-party plaintiff, filed cross-claims against Sherry Beard, Joe's wife.[1] The Beards filed separate motions to dismiss under the TCPA. The trial court overruled the Beards' objections to appellees' evidence and denied both motions to dismiss.

In multiple issues, the Beards argue the trial court erred by overruling their evidentiary objections and denying their motions to dismiss because the allegations in their petitions are based on or in response to their exercise of the right of free speech and right to petition, and appellees failed to provide clear and specific evidence of a prima facie case for each essential element of their claims. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.

**Factual Background**

The underlying facts of this lawsuit are well-known to the parties; therefore, we include only those relevant for disposition of this appeal. *See* TEX. R. APP. P. 47.1. The following facts are from appellees' amended petition against Joe and Littlewood's cross-claims against Sherry.

TFNB has a long history of serving residents and businesses in McClennan County. TFNB is one hundred percent owned by McGregor Bancshares, which is a holding company. All shares of McGregor Bancshares are privately owned.

---

[1] For clarity, the appellees are referred to separately as McGregor Bancshares, TFNB, and Littlewood when necessary. When the Court is referring to all three parties collectively, then it refers to them as appellees.

In 2000, Pat Beard, Joe's father, hired David Littlewood with unanimous approval of the TFNB board of directors. After eighteen months, Littlewood was appointed TFNB's Chief Credit Officer, where he oversaw regulatory compliance. In 2003, Littlewood was again promoted, with unanimous board approval, to President and CEO, a position he has held continuously since 2003.

Two of McGregor Bancshares' key investors are Castle Creek Capital, LLC and EJF Capital, LLC. In March 2019, Littlewood, as the president and CEO of TFNB, issued a press release announcing that McGregor Bancshares had completed a $25 million private placement of its capital stock with certain affiliates of Castle Creek and EJF. The press release emphasized the importance of Capital Creek and EJF's partnership for the growth of TFNB and McGregor Bancshares.

On February 11, 2020, Castle Creek's legal counsel contacted McGregor Bancshares' officers and board members advising them that Castle Creek received an unsolicited, anonymous FedEx package with documents accusing TFNB and its leadership (including Littlewood) of engaging in systemic unsafe and unsound lending practices that jeopardized the financial condition of TFNB. Essentially, the documents accused TFNB and its leadership of violating numerous banking regulations and alleged that TFNB was on the verge of collapse.

Castle Creek immediately requested that McGregor Bancshares' board of directors form a special committee to investigate the validity of the accusations. After reviewing the materials in the anonymous FedEx packages, the special

committee determined that (1) there were no underwriting issues associated with any of the loans it reviewed; (2) TFNB's underwriting practices were disciplined and sound; and (3) there was no factual basis supporting any of the anonymous allegations.

TFNB later discovered that other anonymous FedEx packages with similar accusatory documents about its underwriting practices were sent to other regulators and investors, including EJF. These packages were sent on February 3, 2020, and March 16, 2020.

TFNB believed Joe was the anonymous sender of the packages. Although Joe had no direct relationship with TFNB, the Beard family's history with TFNB transcended decades. Joe's father, Pat, had active leadership roles in TFNB for over forty years. Joe's brother, Mike, followed in Pat's footsteps.

Unlike his father and brother, Joe was not interested in TFNB and instead focused his career on commercial real estate in Dallas. However, his interest changed when Pat died in November 2013. Joe then attempted an unsuccessful hostile takeover of TFNB, which included trying to remove Mike and Littlewood from TFNB leadership. Joe's failure to oust Mike and Littlewood from leadership led to animosity that, despite subsiding for a few years, reignited and intensified in 2019. The Beards began making various accusations against appellees. These accusations led to the underlying suits discussed below.

## Procedural Background

On March 17, 2020, McGregor Bancshares and TFNB filed a Rule 202 petition seeking to ascertain the identity of the person sending the FedEx packages. On April 9, 2020, Sherry filed her original counterclaims against TFNB alleging (1) aiding and abetting, (2) intentional infliction of emotional distress, and (3) piercing the corporate veil.

On July 15, 2020, Sherry filed her third-party plaintiff's first amended third-party petition in which she added Littlewood as a third-party defendant and accused him of initiating and perpetuating a pattern of ongoing interference, threats, and harassment. She claimed Littlewood's harassing behavior began and continued because the Beards determined that Littlewood was unfit to serve as TFNB's president. She alleged, among other things, that Littlewood harassed her family at a country club and other restaurants, called her late at night, and used physical intimidation on several occasions in public. Sherry also alleged that Littlewood told Lee Washington (who subsequently told her) that Littlewood wanted to shoot her in the back of the head. She brought causes of action for (1) invasion of privacy, (2) assault (threat of bodily injury), (3) intentional infliction of emotional distress, (4) stalking, and (5) tortious interference with prospective relations.

On February 11, 2021, McGregor Bancshares and TFNB filed their amended petition against Joe, and Littlewood filed cross-claims against Sherry for (1)

–5–

defamation, (2) business disparagement, and (3) tortious interference with business relations.

Subsequently, Sherry filed a motion to dismiss all of Littlewood's claims under the TCPA. She alleged Littlewood filed his cross-claims in retaliation for her filing her third-party amended petition and, therefore, Littlewood sought to deter, impair, and frustrate the exercise of her constitutional rights of free speech, association, and petition.[2] Joe filed a separate TCPA motion to dismiss appellees' causes of action for (1) defamation, (2) business disparagement, and (3) tortious interference with business relations. Joe also sought dismissal of TFNB's causes of action for tortious interference with a contract and libel or slander of a bank.

Appellees filed numerous objections to the Beards' evidence in support of the Beards' motions to dismiss. The Beards likewise filed objections and motions to strike appellees' evidence. The trial court overruled the Beards' objections. In two separate orders, the trial court overruled the Beards' motions to dismiss in their entirety. This appeal followed.

## Timeliness of Joe Beard's TCPA Motion

We first address whether Joe timely filed his TCPA motion to dismiss. The parties do not dispute the timeliness of Sherry's motion.

---

[2] On appeal, Sherry has relied only on her rights to free speech and to petition; therefore, we limit our review to those two constitutional rights. TEX. R. APP. P. 47.1.

This lawsuit began on March 17, 2020, when McGregor Bancshares and TFNB filed a Rule 202 petition. After conducting pre-suit discovery, TFNB and McGregor Bancshares filed their amended petition on February 11, 2021.

Joe filed his TCPA motion to dismiss on April 12, 2021. TFNB and McGregor Bancshares argued, in part, that Joe's motion was untimely because he did not file it within sixty days after being served with the Rule 202 petition. Joe responded that a Rule 202 petition does not fall within the TCPA's definition of "legal action." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (defining "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counter-claim or any other judicial pleading or filing that request legal, declaratory, or equitable relief").

Our analysis of this issue is guided by the recent Texas Supreme Court case *Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021). In *Montelongo*, the supreme court acknowledged that absent an extension by agreement or good cause, the party seeking dismissal under the TCPA must file a motion within sixty days after the party is served with the legal action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). The court then explained when an amended petition triggers a new sixty-day period for filing a motion to dismiss:

> [T]o the extent an amended or supplemental pleading either (1) adds a new party or parties, (2) alleges new essential facts to support previously asserted claims, or (3) asserts new legal claims or theories involving different elements than the claims or theories previously

asserted, the new pleading asserts a new legal action and triggers a new sixty-day period as to those new parties, facts, or claims.

*Montelongo*, 622 S.W.3d at 293–94; *see also Soo v. Pletta*, No. 05-20-00876-CV, 2022 WL 131045, at *6 (Tex. App.—Dallas Jan. 14, 2022, no pet.) (mem. op.) (applying *Montelongo* and concluding amended pleading triggered a new sixty-day period to file TCPA motion because amended pleading added a new claimant and claim).

A comparison of the Rule 202 petition and the amended petition filed against Joe indicates the following:

- TFNB and McGregor Bancshares filed the Rule 202 petition "to investigate potential claims and suits" against Joe and his "suspected involvement" in sending anonymous packages to third parties with the intention of maliciously harming TFNB's business operations and disparaging TFNB's reputation through false and derogatory statements concerning its financial condition and underwriting practices.

- The Rule 202 petition identified one anonymous FedEx package believed to have been sent by Joe on or about February 4, 2020.

- The Rule 202 petition stated pre-suit discovery would likely "give rise to a host of claims" including business disparagement, tortious interference with existing contract, tortious interference with prospective business relations, and violations of the Texas Finance Code (but did not allege a specific claim under a specific section).

- The amended petition named Joe as a defendant, included additional facts about three other anonymous FedEx packages, "confirmed that the FedEx packages were sent by Joe Beard," and alleged violations of Texas Finance Code § 59.002 (Slander or Libel of a Bank).

The amended petition added a new party, alleged new essential facts to support previously asserted claims, and asserted a new legal claim under the finance code.

–8–

Following *Montelongo*, we conclude the amended pleading asserted new legal claims triggering a new sixty-day deadline. Because Joe filed his motion to dismiss within sixty days of TFNB and McGregor Bancshares filing their amended petition, his motion to dismiss was timely. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(b); *Montelongo*, 622 S.W.3d at 293–94. As such, the trial court could not have denied Joe's motion to dismiss on this basis. We now turn to the burden-shifting analysis of the TCPA.

## TCPA Framework and Standard of Review

Chapter 27 of the Texas Civil Practice and Remedies Code is a legislative enactment to curb "strategic lawsuits against public participation." *Thomas v. Wm. Charles Bundren & Assocs. Law Grp. PLLC*, No. 05-20-00632-CV, 2021 WL 3159795, at *3 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.). The primary feature of the TCPA is a burden-shifting dismissal framework that allows defendants at an early stage to seek dismissal of a meritless suit in response to a defendant's exercise of a protected right. *Id.* The moving party bears the initial burden of demonstrating "that the legal action is based on or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the movant carries that burden, the nonmovant seeking to avoid dismissal must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

We review de novo the trial court's ruling on a TCPA motion, including the trial court's determinations as to whether the parties met or failed to meet their respective burdens under section 27.005. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Thomas*, 2021 WL 3159795, at \*3. In conducting our review, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). With this framework in mind, we consider Sherry and Joe's motions to dismiss.

**Sherry's Motion to Dismiss**

Sherry's TCPA motion to dismiss alleged that Littlewood's cross-claims for defamation, business disparagement, and tortious interference with business relations were retaliatory and sought to deter, impair, and frustrate the exercise of her constitutional rights of free speech and to petition. In her brief, Sherry argues the TCPA applies to Littlewood's defamation cross-claim. She does not address its application to his business disparagement or tortious interference with business relations cross-claims; therefore, we do not address them. *See* Tex. R. App. P. 47.1.

*Exercise of the Right of Free Speech*

For a movant to trigger the TCPA's dismissal framework, there must first be a "communication" as defined by section 27.001(1). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1). Neither party challenges whether the statements at issue

–10–

are "communications." Because the lawsuit involves claims predicated on more than one communication, we must analyze each statement in determining whether Sherry satisfied her burden that the communications were made while exercising her right of free speech. *See Thomas*, 2021 WL 3159795, at *5. The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3).

Sherry relies on two statements in Littlewood's defamation cross-claim that she alleges directly relate to, or are in response to, her exercise of the right of free speech. First, Littlewood alleged that Sherry posted the following statement on Facebook and sent it to hundreds of her Facebook contacts on September 25, 2019:

> Hi, I am sending this message to all my Waco friends. David Littlewood employed Lee Washington to conduct a smear campaign in order to slander Joe Beard[']s character. This is nothing more than slander and complete lies. Lee Washington admitted that David Littlewood is behind this malicious act.

Littlewood also asserted Sherry made defamatory statements on Facebook and in the Waco Tribune:

> Sherry Beard began accusing (or at the very least suggesting) [Littlewood] of being involved in the execution style killing of reality TV star, Joanna Gaines['] Boer goats back in June of 2016. Sherry Beard posted a $50,000 reward on Facebook and in the Waco Tribune for anyone who could provide evidence leading to the arrest and conviction of the persons responsible.

Sherry argues these statements were communications "made in connection with a matter of public concern."

–11–

We begin by recognizing that the legislature amended and narrowed the scope of "matter of public concern" in 2019. *See Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *3 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.) (recognizing legislature's intent to narrow scope of "matter of public concern"). To the extent Sherry argues that "communications" need only have a "tangential relationship" to the public concern that it implicates, and courts have given "considerable breadth" to the term "public concern," we disagree in light of the amended definition and, therefore, her citation to pre-amendment case law is not instructive to our analysis.[3] We consider each statement under the current definition of "matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A)–(C). A "matter of public concern" means "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." *Id*.

Sherry posted the first Facebook statement after she allegedly heard rumors that Littlewood was telling people that Joe did not believe in God. She contends that

---

[3] The prior definition of "matter of public concern" included issues related to health and safety; environmental, economic, or community well-being; or a good, product, or service in the marketplace. *See Jackson v. Kell Auto Sales, Inc*., No. 02-21-00106-CV, 2021 WL 5367846, at *4 (Tex. App.—Fort Worth Nov. 18, 2021, no pet.) (mem. op.) (citing Citizens Participation Act, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7))).

a "prominent local businessman" conducting a "smear campaign" attacking another local businessman certainly has a "tangential relationship" to interest in the community. We disagree.

The record is devoid of evidence that the dispute had any relevance to the broader community or that anyone in the community cared about Joe's religious beliefs or any "smear campaign." Sherry's speech had no connection to McGregor Bancshares, TFNB, the banking industry, or the broader community. Rather, her Facebook statements were personal attacks on Littlewood's character stemming from a private dispute affecting the fortunes of only the parties involved—Sherry, Joe, and Littlewood. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (to be a matter of public concern, a claim must have public relevance beyond the interests of the parties). Private disputes, whether sounding in contract or in tort, that merely affect the fortunes of the litigants are not matters of public concern. *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.). As such, Sherry's Facebook statement about a "smear campaign" was not made in connection with a matter of public concern. Thus, Sherry failed to carry her initial burden of demonstrating that her statement related to a matter of public concern thereby depriving her of the exercise of her right of free speech as defined by the TCPA. To the extent the trial court denied Sherry's motion to dismiss based on this statement, the trial court did not err.

Next, Sherry claims the "killing of reality TV star, Joanna Gaines' Boer goats" is per se subject to the TCPA because a "matter of public concern" includes a person who "has drawn substantial public attention due to . . . celebrity." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A). She also contends criminal acts are "matters of public concern."

TCPA case law is clear that criminal acts are matters of public concern. *See, e.g.*, *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *2 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) (statements regarding assaults were matters of public concern); *CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-21-00042-CV, 2021 WL 4398031, at *3 (Tex. App.—Dallas Sept. 27, 2021, no pet.) (mem. op.) (news broadcast involving robbery, high-speed chase, and arrest of suspect were matters of public concern); *Duncan v. Acius Grp., LP*, No. 05-18-01432, 2019 WL 4392507, at *4 (Tex. App.—Dallas Sept. 13, 2019, no pet.) (mem. op.) (accusing someone of abusing/killing animals was matter of public concern). Killing animals is a criminal act. *See* TEX. PENAL CODE ANN. § 42.092 (cruelty to non-livestock animals).

Littlewood's defamation claim, in part, relies on Sherry's Facebook post about the killing of goats. To the extent Littlewood's defamation claim is predicated on this statement, it is a "matter of public concern," and therefore based on or in response to Sherry's exercise of her right of free speech. *See Duncan*, 2019 WL 4392507, at *4 (accusing someone of abusing/killing animals is matter of public

–14–

concern implicating the TCPA). Having reached this conclusion, we need not address Sherry's additional argument that her statement was a matter of public concern because it involved a "celebrity." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A); *see also* TEX. R. APP. P. 47.1.

Because Sherry satisfied her initial burden, we now move to step two of the burden-shifting analysis: whether Littlewood established by clear and specific evidence a prima facie case for each essential element of his defamation claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). The elements of a defamation action include (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) caused damages. *See In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) (orig. proceeding).

For a statement to be actionable as defamation, it must refer to an ascertainable person. *Main v. Royall*, 348 S.W.3d 381, 394 (Tex. App.—Dallas 2011, no pet.). The statement must "point to the plaintiff and no one else." *Id*. (quoting *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (Tex. 1960)). A statement does not need to refer to the plaintiff by name, however, if people who know and are acquainted with the plaintiff reasonably understand from reading the statement that it referred to the plaintiff. *Id*. Further, to qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Better Bus.*

–15–

*Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 356

(Tex. App.—Houston [1st Dist.] 2013, pet. denied).

> The Facebook post in question stated the following:
>
> I am offering a $50,000 cash reward to anyone who can provide information that leads to the arrest and conviction of the person or persons who were responsible for the execution style killing of the 2 Boer goats at the Magnolia Market at the Silos on the night of June 17-18, 2016.
>
> These goats were shot multiple times sometime between 8:00 pm Friday, June 17th and 7:30 am Saturday, June 18th, 2016.

The same post appeared in the Waco Tribune but added, "Contact: Sherry Beard via Facebook Messenger."

Littlewood failed to provide clear and specific evidence that the publications referred specifically to him. In reality, they do not refer to anyone. Moreover, he failed to provide clear and specific evidence establishing that the statements were derogatory, degrading, somewhat shocking, and contain elements of disgrace. *See id.* While someone might find statements discussing the execution-style killing of goats shocking, we cannot reach that conclusion under these facts, particularly when the statements were not linked to any specific person. Further, to the extent Littlewood contends the statements were defamatory "by gist," we likewise reject his argument. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 628 (Tex. 2018) (discussing defamation "by gist").

Littlewood failed to establish by clear and specific evidence the second element of a defamation claim—a defamatory statement concerning him—and

–16–

therefore, failed to establish a prima facie case of defamation based on Sherry's Facebook post and Waco Tribune newspaper notice. To the extent the trial court denied Sherry's motion to dismiss Littlewood's defamation cross-claim based on these statements, the trial court erred.

### Right to Petition

We now consider whether Littlewood's defamation cross-claim is based on or is in response to, Sherry's exercise of her right to petition. In her motion to dismiss, Sherry argued the following:

> Littlewood unquestionably brings forth claims that invoke the application of the TCPA, in citing Sherry Beard's proper and valid Counter-Claims as evidence of his own retaliatory Claims and damages. By tethering Sherry Beard's right to petition in this proceeding to their own claims by way of the complained communications in the Plaintiffs' own Petition, Plaintiffs have directly invoked the TCPA.

Sherry asserted the following statements in Littlewood's cross-claim were "tethered" to her own claims:

> Sherry Beard is now accusing TFNB and Littlewood of systemically harassing, threatening, and stalking her; initiating a campaign of spying, physical intimidation, and non-stop harassment and terror; threatening her with imminent bodily injury; physically assaulting her; calling her in the middle of the night; orchestrating her termination (actually resignation) of her unpaid volunteer position with the McLennan County Sheriff's Office; and *even claiming that Lee Washington told her that Littlewood wanted to shoot her in the back of the head* (emphasis added).[4]

---

[4] Sherry and Littlewood both focus on this statement.

–17–

Littlewood further stated that "[t]his is the first time Sherry Beard has ever made any such accusations – as insane and patently false as they are." These accusations were part of Sherry's third-party plaintiff's first amended third-party petition filed on July 15, 2020.

The "exercise of the right to petition" means "a communication pertaining to a judicial proceeding." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(1). A "judicial proceeding" is any proceeding initiated to procure an order or decree, whether in law or in equity. *See Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 729 (Tex. App.—Dallas 2016, pet. denied). There is no "matter of public concern" requirement in the statutory definition of the right to petition. *See Watson v. Hardman*, 497 S.W.3d 601, 606 (Tex. App.—Dallas 2016, no pet.).

We agree Littlewood's defamation cross-claim was based on or in response to Sherry's right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1)(B). Littlewood's defamation cross-claim directly responded to and was based on Sherry's claims in her first amended third-party petition. He specifically stated she was "now accusing" him of a laundry list of nefarious activities and noted it was the "first time" she had made the allegations. Thus, to the extent Littlewood contends that Sherry's statement that Littlewood wanted Sherry "shot in the back of head" did not relate to any "judicial proceeding" or other "proceeding," he is incorrect.

Littlewood cites to *Dyer v. Medoc Health Services, LLC*, 573 S.W.3d 418, 429–30 (Tex. App.—Dallas 2019, pet. denied) to support his argument; however, his reliance is misplaced. In that case, we concluded the appellants produced no evidence of a pending judicial proceeding at the time the statements (text messages) were made. *Id*. at 429. In contrast to *Dyer*, there is no question a judicial proceeding was pending here, as the very statement at issue was contained in Sherry's first amended third-party petition. Littlewood's subsequent defamation cross-claim, by the language of his own pleading, was in part, in response to her statement made in a judicial proceeding. *See Hersch v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (plaintiff's pleadings are the "best and all-sufficient evidence of the nature of an action and "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more"). We conclude Sherry met her initial burden of demonstrating that Littlewood's shoot-in-the-head statement was based on or in response to her statement in a judicial proceeding and, thus, her right to petition as defined by the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1)(B).

Because Sherry established her burden under the first step of the TCPA analysis, we would typically move to step two: whether Littlewood established by clear and specific evidence a prima facie case for each essential element of his defamation cross-claim. *Id*. § 27.005(c). However, Sherry has not challenged any element of Littlewood's shot-in-the-head defamation cross-claim on appeal.

–19–

Instead, she raises only one argument—his claim is barred by the judicial proceedings privilege. *See Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721, 724 (1889) ("[F]or any defamatory matter in a pleading in a court of civil jurisdiction no action for libel may be maintained" and "proceedings in civil courts are absolutely privileged" as "[c]itizens ought to have the unqualified right to appeal to the civil courts for redress, without the fear of being called to answer in damages for libel.").

Like other affirmative defenses, parties are generally required to plead the judicial-proceedings privilege because it is a defense meant to avoid or affirmatively defend against certain claims, including defamation. *See* Tex. R. Civ. P. 94; *see also Marble Ridge Capital LP v. Neiman Marcus Grp.*, 611 S.W.3d 113, 122 (Tex. App.—Dallas 2020, pet. dism'd) (describing judicial-proceedings privilege as an affirmative defense); *Watson v. Hardman*, 497 S.W.3d 601, 608 (Tex. App.—Dallas 2016, no pet.) (same). An affirmative defense must be pleaded, or it is waived. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992). The requirement is not absolute, however, and in some cases, no waiver has been found when a defense is apparent on the face of the claimant's pleading. *Id*. (parental immunity not waived). This Court has likewise assumed, without deciding, that a trial court could have granted a TCPA motion based on the judicial-proceedings privilege despite the claimant never pleading the defense but instead only raising it in its TCPA motion. *See Marble Ridge Capital LP*, 611 S.W.3d at 130.

–20–

Under either scenario, Sherry's argument fails. She did not plead the affirmative defense in the trial court, the defense is not apparent on the face of her pleading, and she did not raise the privilege in her motion to dismiss. Accordingly, Sherry failed to preserve the only argument she raises on appeal challenging the trial court's denial of her motion to dismiss. To the extent the trial court denied Sherry's motion to dismiss Littlewood's defamation cross-claim based on the shoot-in-the-head statement, the trial court did not err.

"When a legal action is in response to actions both protected and unprotected under the TCPA, the entire suit is not subject to dismissal; only that part relating or responding to the protected action is." *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 911 (Tex. App.—Amarillo 2021), *modified on reh'g on other grounds*, 621 S.W.3d 88 (Tex. App.—Amarillo Mar. 18, 2021, pet. denied). In summary, the trial court erred by denying Sherry's motion to dismiss as to Littlewood's defamation suit to the extent it is based on Sherry's statements on Facebook and the Waco Tribune regarding the killing of goats. In all other respects, we affirm the trial court's order denying Sherry's motion to dismiss. Littlewood's defamation suit may proceed within this limited scope.

### Joe's Motion to Dismiss

Joe's TCPA motion to dismiss alleged that appellees' numerous causes of actions were in retaliation for alleged communications he made to federal regulators, investors, and customers regarding potential, previous, and ongoing investigations

–21–

into TFNB's business practices. He alleged the claims were based on, related to, and were in direct response to his constitutional rights to petition and to exercise free speech.[5]

Joe challenged the following communications in appellees' amended petition claiming that he anonymously sent his opinions alleging that appellees were:

(a) Extending credit to unqualified and inexperienced borrowers to fund ill-conceived projects;

(b) Failing to classify the credit and extending add-on loans to continue to pay fees and interest to the bank;

(c) Extending additional credit in the form of subordinate liens for a credit line or a property improvement where a portion of the funds are used for paying fees, interest, taxes, operating/living expenses in order to avoid any kind of classification of the credit;

(d) Having no construction loan management or oversight; and

(e) Having improper relationships with an appraisal company to justify loan values and extensions of credit.

Appellees' first amended petition further alleged that Joe opined:

(a) TFNB has no underwriting;

(b) TFNB lacks industry knowledge;

(c) TFNB does not investigate their borrowers;

(d) TFNB has no institutional control;

(e) Littlewood ignores the bank's underwriters in charge of loans;

(f) Littlewood regularly yells and screams at his underwriters;

(g) Littlewood fosters a culture of compliance at his will; and

---

[5] He included the right of association in his motion to dismiss but has not raised that argument on appeal. TEX. R. APP. P. 47.1.

(h) Problem loans are systematically buried through additional funding in violation of sound banking practices and TFNB/Littlewood fails to address these problems.

### *Right to Free Speech*

Joe asserts his alleged communications relate to a matter of public concern because they involve banking business practices and the risk those practices pose to the public and interested at-risk parties. He contends these statements relate to "actual concerning, ongoing practices within the community banking service within the Waco community's economic forum, which is a public concern." Joe further claims he and the professional community "share a common interest in ethical, fair, legal, and safe business/financial practices."

Appellees respond Joe's accusations have nothing to do with the public's well-being. We agree.

Instead, Joe's alleged statements amount to accusations regarding a bank's lending practices, its internal practices, and its poor management by Littlewood. At most, they potentially affect TFNB's investors, customers, and vendors. Such private disputes, whether sounding in contract or in tort, that merely affect the fortunes of the litigants involved are not matters of public concern. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 136 (to be a matter of public concern, a claim must have public relevance beyond the interests of the parties); *Morris*, 615 S.W.3d at 576. Such is particularly the case under these facts when Joe has no interest in TFNB. Any potential effect of TFNB's lending practices on its private customers, investors,

–23–

and vendors is none of Joe's business despite "truly car[ing] about the welfare of the community TFNB serves."

To the extent Joe argues that "a major bank in the area being investigated by federal regulators and whose investors are requesting a special committee to investigate" is a matter of public concern, we disagree. The possibility that a communication could result in a matter of public concern is beyond the reach of the TCPA. *See, e.g., Teachers Fed. Credit Union v. Esquivel*, 621 S.W.3d 786, 799 (Tex. App.—El Paso 26, 2021, no pet.); *see also Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied).

Joe failed to carry his initial burden of demonstrating that his statements related to a matter of public concern. The trial court properly denied Joe's TCPA motion on this basis.

### *Right to Petition*

Joe also argues that all of appellees' claims relate to or are in response to his right to petition. Appellees respond that Joe cannot establish that his statements were made "in connection with" a legislative, executive, judicial, or other governmental proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(B). However, the "connection with" language appears in section 27.001(4)(B). Section 27.001(4)(C), on which Joe relies, only requires "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive,

judicial, or other governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(C).

Here, shortly after learning that anonymous FedEx packages were delivered to TFNB investors, TFNB advised its primary regulator (the Office of Comptroller of the Currency or the OCC) of the allegations, who in turn suggested that the OCC had received a similar anonymous package. According to both Littlewood and Mike Beard, "This prompted the OCC, along with fraud examiners from the FDIC, to immediately start investigating the very same lending relationships that were the subject of Joe's 'anonymous' FedEx Packages." These communications were "reasonably likely to encourage consideration or review by a . . . governmental body," and did in fact lead to such a review. Accordingly, Joe met his initial burden of demonstrating that appellees' claims were based on or in response to his right to petition as defined by the statute. *See id*. §§ 27.001(4)(C), 27.005(b)(1)(B).

Because Joe established his initial burden under the first step of the TCPA analysis, we now move to step two: whether appellees established by clear and specific evidence a prima facie case for each essential element of their multiple causes of action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

As a refresher, McGregor Bancshares, TFNB, and Littlewood sued Joe for defamation, business disparagement, and tortious interference with business relations. TFNB also sued Joe for libel or slander of a bank under Texas Finance Code section 59.002 and for tortious interference with contract.

–25–

We begin by addressing whether section 59.002 of the finance code provides a private cause of action for libel or slander of a bank. Section 59.002 of the finance code states:

(a) A person commits an offense if the person:

(1) knowingly makes, circulates, or transmits to another person an untrue statement that is derogatory to the financial condition of a bank located in this state; or

(2) with the intent to injure a bank located in this state, counsels, aids, procures, or induces another person to knowingly make, circulate, or transmit to another person an untrue statement that is derogatory to the financial condition of any bank located in this state.

(b) An offense under this section is a state jail felony.

TEX. FIN. CODE ANN. § 59.002. Joe argues Texas does not recognize a private cause of action for libel or slander of a bank, which is a criminal statute providing only criminal penalties. TFNB argues that an intertextual review of the finance code establishes that section 59.002 recognizes a private cause of action.

When a private cause of action is alleged to derive from a statutory provision, our duty is to ascertain the drafters' intent. *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 463 (Tex. App.—Dallas 2021, pet. filed). In such a case, the statute itself serves as the basis for the analysis. *See Cernosek Enter., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 663 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Although in some cases it may be desirable to imply a private right of action to provide remedies thought to effectuate the purpose of the statute,

–26–

ultimately, we must determine whether the drafters intended to create such a private remedy. *See Molina Healthcare of Tex*., 620 S.W.3d at 464. We generally will not imply that a statutory provision gives rise to a private cause of action unless the intent is clear from the language. *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004).

The finance code contains four statutes in which a violation is designated as a state jail felony for libel or slander of various banking institutions: § 59.002 ("Slander or Libel of Bank"), § 89.101 ("Criminal Slander of a Savings and Loan Association"), § 119.202 ("Criminal Slander or Libel of a Savings Bank"), and § 199.001 ("Slander or Libel of State Trust Company"). TFNB argues that by excluding the term "criminal" from section 59.002's title, the legislature intended to permit parties to bring civil actions for libel or slander of a bank. We disagree.

The Code Construction Act provides that the heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute. TEX. GOV'T CODE ANN. § 311.024. Consequently, the title does not control the content of the statute or dictate our interpretation of it. *See In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *7 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.). We consider the language of the statute itself. *Id.*

Section 59.002(b) provides a criminal penalty for violating the statute—a state jail penalty. *See* TEX. FIN. CODE ANN. § 59.002(b). As such, the statutory language is clear that the statute is criminal in nature, and we will not imply a private cause of

action.[6]  It is not for intermediate appellate courts to create new causes of action. *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 10 (Tex. App.—Amarillo 2015), *aff'd*, 526 S.W.3d 411 (Tex. 2017).  Creating a new cause of action is tantamount to creating a new law and doing so lies within the province of the Texas Supreme Court or the Texas Legislature.  *Id*.

Moreover, the Texas Supreme Court "treads cautiously when deciding whether to recognize a new tort."  *Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998).  It has expressed hesitation in creating a tort in an "already crowded judicial system" and is "especially averse to creating a tort that would only lead to duplicative litigation, encouraging inefficient relitigation of issues better handled within the context of the core cause of action."  *Id*.  Such is the case here.  TFNB sued Joe for business disparagement, and it has provided no compelling reason for recognizing a new cause of action under the finance code.  Rather, TFNB's claims would create duplicative litigation and should instead be handled within its core cause of action, which is business disparagement.  *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (explaining essential elements of business disparagement as "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in

---

[6] Both parties accuse the other of not citing to any case law supporting their position; however, none exists.  In fact, there are no cases that analyze or even cite to any of these finance code provisions.

–28–

special damages to the plaintiff). The trial court erred by failing to grant Joe's motion to dismiss as to TFNB's finance code section 59.002 cause of action.

As to appellees' remaining causes of action, Joe argues they all fail because there is no properly authenticated evidence identifying him as the person who sent the FedEx packages. To the extent appellees relied on unauthenticated evidence to establish his identify, Joe asserts the trial court abused its discretion by overruling his objections and should have granted his motion to dismiss because appellees failed to provide clear and specific evidence of their prima facie case.

Joe has limited his argument on appeal to appellees' failure to identify him as the sender of the FedEx packages. This is his lynchpin. Whether appellees met their burden to establish a prima facie case as to the other elements of their various causes of action is not before us, and we do not address them. *See Baker v. Orange Panda, LLC*, No. 04-19-00846-CV, 2020 WL 6293150, at *4 (Tex. App.—San Antonio Oct. 28, 2020, no pet.) (mem. op.); TEX. R. APP. P. 47.1.

Joe first argues that the trial court abused its discretion by considering some of appellees' evidence obtained during pre-suit discovery. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.); *see also Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). A trial court abuses its discretion if it acts arbitrarily and without reference to any guiding rules or principles. *Garcia v. Martinez*, 988

S.W.2d 219, 222 (Tex. 1999). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

After McGregor Bancshares and TFNB filed their Rule 202 petition, the trial court granted pre-suit discovery. McGregor Bancshares and TFNB served depositions on written questions (DWQs) to FedEx. Joe objected to the DWQs on numerous grounds including that the notice required FedEx to respond within seven days of service, allowed FedEx to send answers by mail or email in contravention of rule 200, and was not served on all witnesses and parties.

After FedEx responded to the DWQs, the Beards filed a motion to suppress the FedEx documents lodging many of the same objections. The court held a hearing on the motion, and the Beards argued that none of the rule 203.2 procedures for DWQs were followed because none of the deponents answered questions before a stenographer. Joe argued FedEx answered the questions in signed affidavits, and an affidavit is not sworn deposition testimony.

The trial court expressed reluctance to suppress the evidence "at this stage of the game because this case just started earlier this year . . . In my mind at this point everything is discovery . . . We are just not at the stage where we are basically excluding or suppressing any evidence at this point." The court also indicated skepticism to the Beards' argument that the affidavits should be suppressed because they were not transcribed depositions in strict compliance with rule 203.2. While

–30–

the court recognized McGregor Bancshares and TFNB might not be able to use FedEx's responses to authenticate the documents at trial because they were not depositions, the court noted the responses could be used for summary judgment. The court overruled the Beards' motion to suppress. The Beards challenge this ruling, along with other rule 200 objections.

First, to the extent the Beards challenge the FedEx discovery because they allege it was not properly served, we disagree. Rule 200.1 provides that the "notice of intent to take the deposition must be served on the witnesses and all *parties* at least twenty days before the deposition is taken." TEX. R. CIV. P. 200.1. Rule 200.3(b) provides that "any *party* may object to the direct questions and serve cross-questions on all other *parties*." TEX. R. CIV. P. 200.3(b). Although McGregor Bancshares and TFNB may not have strictly complied with the rules of civil procedure for DWQs, the trial court did not abuse its discretion by overruling the Beards' objection and denying their motion to suppress because the Beards were not parties to the litigation at the time McGregor Bancshares and TFNB served those discovery requests on FedEx.[7] In reaching this conclusion, we acknowledge that Sherry had sued Littlewood at that point in time; however, her claims were unrelated to McGregor Bancshares and TFNB's suspicions about Joe's activities and therefore

---

[7] The Beards did, however, receive notice of the intent to take the depositions as acknowledged in their objections to the subpoena for DWQs.

did not make her a party entitled to service of the DWQs related to the Rule 202 petition.

The Beards' remaining arguments relate to the authentication of FedEx's responses, which appellees relied on to identify Joe as the anonymous sender of the packages. The Beards argue the trial court abused its discretion by overruling their objections and denying the motion to suppress because FedEx's responses were affidavits and, therefore, did not follow the rules for DWQs. McGregor Bancshares and TFNB argue that "applied here, it is a distinction without a difference," and regardless, the evidence was authenticated.

First, the parties have not cited to, and we have not found, any case in which a motion to suppress has been granted or denied in the context of a Rule 202 petition for pre-suit discovery. The case law discussing rule 203.5 is scant and not instructive on the issue here. *See* TEX. R. CIV. P. 203.5 (party may object to any errors or irregularities in manner in which testimony is transcribed, signed, delivered, or otherwise dealt with by deposition officer). The general purpose of a Rule 202 petition is to investigate potential claims. The trial court expressed its concern that the case was at a very early stage of the litigation, and the court did not want to exclude the evidence at this juncture. We cannot say this was not a legitimate basis for the trial court's ruling, particularly considering the dearth of relevant case law. Accordingly, the trial court did not abuse its discretion by denying the Beards' motion to suppress. Moreover, as further explained below, despite Joe's objections

to the contrary, appellees authenticated the necessary evidence supporting their TCPA response.

Both sides argue extensively regarding whether appellees properly authenticated several exhibits identifying Joe as the sender of the FedEx packages. These include Exhibits 48, 50, and 51. We begin with Exhibits 50 and 51, which were purported to be two pictures of Joe taken at a Dallas FedEx location on Oak Lawn.

Evidence, like a photograph, may be authenticated in numerous ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *See, e.g.*, TEX. R. EVID. 901(b)(1), (3)–(4); *see also Gadekar v. Zankar*, No. 12-16-00209-CV, 2018 WL 2440393, at *5 (Tex. App.—Tyler May 31, 2018, no pet.) (mem. op.) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). The rule does not require that the witness identifying the photograph took it, observed who took it, or knew when it was taken. *See Kirwan v. City of Waco*, 249 S.W.3d 544, 549 (Tex. App.—Waco 2008), *rev'd on other grounds*, 298 S.W.3d 618 (Tex. 2009). All that is necessary is testimony from a witness with personal knowledge that the photograph accurately depicts what it is "claimed to be." *Id*.; TEX. R. EVID. 901(b)(1); *see also Davidson v. Great Nat'l Life Ins. Co*., 737 S.W.2d 312, 314–15 (Tex. 1987) ("Admissibility of a photograph is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that witness

–33–

or person with knowledge that the photograph is a correct representation of such facts.").

Here, Sherry was shown Exhibits 50 and 51 during her deposition. She identified Joe in both pictures. To the extent Joe argues her testimony was "very equivocal," we disagree. While Sherry made some statements that the pictures were "a little distorted" and "superimposed, maybe," when asked twice if she recognized the man in both exhibits, she unequivocally answered she recognized the man as her husband.[8] Further, one picture shows part of the FedEx logo with the time stamp "20 02 04 15:29:45," which the trial court could reasonably infer meant 3:29 p.m. on February 4, 2020. One of the packages was sent on February 4, 2020.

Rule 901(b)(1) requires only a showing satisfying the trial court that the matter in question is what its proponent claims. *See Hernandez v. W-S Indus. Servs. Inc.*, No. 13-14-00404-CV, 2015 WL 5136771, at *3 (Tex. App.—Corpus Christi-Edinburg, Aug. 31, 2015, no pet.) (mem. op.). The trial court, satisfied with the quality of the pictures and Sherry's identification, as a person with knowledge of Joe's appearance, acted within its discretion by finding that the pictures accurately

---

[8]   Q: Who do you recognize the man in Exhibit 50 to be?

A: My husband . . .

Q: Okay. What about Exhibit 51, do you recognize the man depicted in Exhibit 51?

A: Yes.

Q: Who do you recognize that man to be?

A: That's my husband.

–34–

depicted what they "claimed to be." *See* TEX. R. EVID. 901(b)(1); *see also Davidson*, 737 S.W.2d at 314–15. We may, therefore, consider Exhibits 50 and 51 in our de novo review of Joe's motion to dismiss.[9]

Despite Exhibits 50 and 51, Joe argues appellees failed to provide the evidentiary link that he sent the FedEx package on February 4, 2020, because the evidence at most simply suggests he was at that Oak Lawn FedEx location on that date. Joe specifically alleges appellees failed to authenticate Exhibit 48, which could have closed the evidentiary gap. Again, we disagree.

Rule of evidence 901 requires the trial court to evaluate the evidence that supports the item's authenticity—whether found within the item itself or provided by an extrinsic source. *See Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020). Evidence may also be authenticated by comparison with other authenticated evidence or by circumstantial evidence. *See Gadekar*, 2018 WL 2440393, at *5 (citing *Tienda*, 358 S.W.3d at 638).

The custodian of records for FedEx Express provided documents in response to the DWQs, which appellees attached to their TCPA response. One of the "Shipment Information Reports," indicated "Jay Bern" shipped a FedEx package, tracking number 390151004245, from the Oak Lawn location on February 4, 2020

---

[9] To the extent Joe argues appellees did not attach Exhibits 50 and 51 to Sherry's deposition so the record fails to show "what Exhibit 50" was shown to her, we are unpersuaded by his argument. First, he has not challenged her identification of Exhibit 51. Further, Exhibit 50 is repeatedly referenced in multiple documents throughout the clerk's record and the parties' briefs. Exhibit 50 is consistently the same picture of Joe; therefore, Joe's argument to the contrary is disingenuous.

to "ATTN: Portfolio Manager: TFNB Castle Creek Capital."  Exhibit 48, though not attached to the DWQs, detailed the same information and further indicated the last four numbers of the credit card used was 3650.  The customer's name who used the credit card was "Joseph Beard."  Exhibit 48 showed a second transaction on March 16, 2020, for a package with tracking number 391149321437 billed to "Joe."  Again, the credit card ending in 3650 was used by customer "Joseph Beard."

It was within the trial court's broad discretion to compare the authenticated information within the "Shipment Information Reports," which included the same tracking numbers, transaction dates, name, and addresses, to the information in Exhibit 48.  Based on the commonalities between these two exhibits, we cannot say the trial court acted arbitrarily or without any rules to guiding principles by overruling Joe's rule 901 objection to exhibit 48.  *Id.*

With this evidence in mind, we now apply it to step two of the TCPA analysis. The term "clear and specific" pertains to the quality of evidence required to establish a "prima facie case"; and the term "prima facie case" pertains to the amount of evidence necessary for a plaintiff to carry its minimal factual burden to support a rational inference establishing each essential element of its claim.  *See Marble Ridge Capital*, 611 S.W.3d at 122.  We conclude appellees met this burden.

Sherry explicitly identified Joe in a picture showing he was at FedEx on February 4, 2020, the day one of the packages was sent to Castle Creek.  FedEx documents indicate "Jay Bern," using Joseph Beard's credit card, sent a FedEx

package to Castle Creek on February 4, 2020 from the "DALKC" pick up location. "DALKC" is the Oak Lawn FedEx location. Similarly, "Joe" used the credit card linked to the customer named "Joseph Beard" on March 16, 2020, to send another package to Castle Creek. This is "clear and specific evidence" identifying Joe as the person who sent the FedEx packages because it is "free from doubt" and "referring to a particular named thing." *See Lipsky*, 460 S.W.3d at 587.

In reaching this conclusion, we are mindful and follow the supreme court's directive that at this stage in the litigation, the clear-and-specific-evidence requirement "neither imposes a heightened evidentiary burden nor categorically rejects the use of circumstantial evidence when determining the plaintiff's prima-facie-case burden." *See Sierra Club*, 463 S.W.3d at 867 (citing *Lipsky*, 460 S.W.3d at 587). However, appellees' evidence is more than sufficient, and this is not a doubtful case, particularly when we may consider circumstantial evidence. Accordingly, appellees established a prima facie case for each of their remaining causes of action by carrying their minimal factual burden to support a rational inference establishing the only element Joe challenges on appeal—his identity. *See Marble Ridge Capital LP*, 611 S.W.3d at 122.

Typically, the burden would shift back to Joe to establish a valid defense to appellees' claims; however, Joe has not raised any defenses on appeal. Therefore, the trial court properly denied Joe's motion to dismiss as to appellees' remaining causes of action.

## Conclusion

We reverse in part the trial court's denial of Sherry's dismissal motion. We render judgment dismissing Littlewood's defamation cross-claims against Sherry to the extent those claims are based on her Facebook post and the Waco Tribune statements regarding the killing of Boer goats. In all other respects, the trial court's order denying Sherry's motion to dismiss is affirmed. Thus, Littlewood's defamation suit against Sherry may proceed in the trial court within this limited scope.

The portion of the trial court's order denying Joe's TCPA motion to dismiss TFNB's Texas Finance Code section 59.002 claim (Libel or Slander of a Bank) is reversed, and we render judgment dismissing that claim. In all other respects, the trial court's order denying Joe's TCPA motion to dismiss appellees' remaining causes of action is affirmed.

On remand, in light of our disposition rendering dismissal of some of appellees' causes of action, the trial court shall award Sherry and Joe relief under civil practice and remedies code section 27.009(a) (award of reasonable attorney's fees and costs).

Otherwise, the case may proceed in the trial court consistent with our resolution of these issues on interlocutory appeal.


/Craig Smith/
CRAIG SMITH
JUSTICE


210478F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHERRY BEARD AND JOSEPH
BEARD, Appellants

No. 05-21-00478-CV      V.

MCGREGOR BANCSHARES, INC.
AND THE FIRST NATIONAL
BANK OF MCGREGOR D/B/A
TFNB YOUR BANK FOR LIFE,
AND DAVID LITTLEWOOD,
Appellees

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-04466.
Opinion delivered by Justice Smith.
Justices Carlyle and Garcia
participating.

In accordance with this Court's opinion of this date, the trial court's June 16, 2021 dismissal orders are **AFFIRMED** in part and **REVERSED and RENDERED** in part.

We **REVERSE** in part and **RENDER** judgment dismissing the portion of the trial court's June 16, 2021 order denying appellant Sherry Beard's TCPA motion to dismiss appellee David Littlewood's defamation cross-claims to the extent his claims are based on appellant Sherry Beard's Facebook post and the Waco Tribune statements regarding the killing of Boer goats. In all other respects, the trial court's June 16, 2021 order denying appellant Sherry Beard's TCPA motion to dismiss is **AFFIRMED**.

We **REVERSE** the portion of the trial court's June 16, 2021 order denying appellant Joseph Beard's TCPA motion to dismiss appellee The First National Bank of McGregor Bancshares d/b/a TFNB Your Bank for Life's Texas Finance Code section 59.002 claim (Libel or Slander of a Bank) and **RENDER** judgment dismissing that cause of action.

In all other respects, the trial court's June 16, 2021 order denying appellant Joseph Beard's TCPA motion to dismiss is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion and for the trial court to award appellants Joe and Sherry Beard attorney's fees pursuant to Texas Civil Practices and Remedies Code section 27.009(a).

It is **ORDERED** that each party bear their own costs of this appeal.

Judgment entered April 11, 2022.